No. 860

**First Circuit**

———

SHAFER v. TOWN OF MADISONVILLE ET AL.

———

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Original Judgment Amended and Rehearing Refused.)

———

H. W. Robinson, of New Orleans, and B. & M. Purser, of Amite, attorneys for plaintiff, appellant.

Delvaille H. Theard, of New Orleans, attorney for defendant, appellee, Susquehanna, Inc.

Morgan & Simmons, of Covington, attorneys for defendant, appellee, Town of Madisonville.

ELLIOTT, J. Mrs. Elizabeth Shafer, wife of Sidney B. Boudreaux, member of an outing party from New Orleans, consisting of about 400 girls, accompanied by their mothers, went on a pleasure trip across Lake Pontchartrain. The trip was made on May 27, 1927.

The steamboat Susquehanna, owned and operated by Susquehanna, Inc., was used by the excursionists for the purpose of making the trip.

The party first visited Mandeville, then proceeded to Madisonville, where they dis-

embarked and went ashore, that being part of the trip. For that purpose it was necessary to land on the wharf, from which they proceeded to the streets of the town, and, after spending the allotted time in Madisonville, the party came back to the boat moored at the wharf for the purpose of returning to their homes in New Orleans.

In returning to the boat by way of the wharf the plaintiff received an injury on account of which she brought this suit against the Susquehanna, Inc., and the town of Madisonville. She alleges on the subject: That on her return to and while on the wharf, and about ten or twelve feet from the boat, and in the direct route between the gangplank and the shore, she stopped a moment to speak to a friend, when her left leg went through the wooden flooring of the wharf, which was so rotten that it broke under her weight, letting her leg go down through the broken wood to her knee, which caused her to fall on her right arm, resulting in severe contusion of the elbow, shoulder, left knee, and ankle. That in the fall the skin was torn from her left leg on both sides of her ankle and knee, splinters of wood being driven into the flesh, causing hemorrhage within the tissues, which in all was very painful.

That the wharf was old and the wood so rotten that it gave way under her weight while she was standing still upon it.

That the Susquehanna, Inc., was the owner of the Susquehanna, and it was the duty of the steamer and its master and owners to furnish a safe place for its passengers to leave and embark, etc.

That it was gross carelessness and negligence on the part of the town of Madison-ville to operate for hire and permit to be used by the public a wharf which was unsafe and dangerous on account of its rotten flooring. That her injury was due solely to the carelessness and negligence of the Susquehanna, Inc., and the town of Madisonville, their agents, employees, and servants. She claims of them, in solido, $10,000 on account of her injuries.

The Susquehanna, Inc., after excepting that plaintiff's petition sets forth no cause or right of action, answered, denying generally all the averments in her petition. It urged no special defenses, and prayed that plaintiff's demand be rejected. The answer of the town of Madisonville is similar to that of the Susquehanna, Inc., except that it admits that the Susquehanna did land at the wharf in Madisonville referred to by plaintiff; that such landing was made without the knowledge or consent of the town authorities, contrary to its wishes. It urges no special defenses, and prays that plaintiff's demand be rejected.

The suit was filed on February 20, 1928, but it was not tried until April 21, 1930, more than two years later. The lower court for written reasons assigned rejected plaintiff's demand against both defendants. The plaintiff has appealed.

The exception of no cause or right of action urged by the Susquehanna, Inc., not having been ruled on by the lower court, and not being urged in the brief, is not a question before us.

As for plaintiff's charges of negligence, carelessness, and fault on the part of the Susquehanna, Inc., the disembarkation was safely made at the town wharf, which was the property of the town of Madisonville. It was on her return to the boat after vis-

iting in the town that plaintiff was injured. The Susquehanna, Inc., is not responsible for the condition of the wharf or the pavilion referred to by the witnesses. Her demand against Susquehanna, Inc., was therefore properly rejected.

But a different situation appears as to the town.

The town of Madisonville was incorporated by special enactment of the Legislature, February 18, 1817. See Acts 1817, p. 106. Section 3 of this act confers on the town very general authority on the subject of police; but no reference is therein made to the subject of wharves.

The town was re-incorporated by Act No. 327 of 1852. Section 7 of this act provides that:

"They shall have jurisdiction over the public landings and wharves and alter and repair the same when necessary."

It appears from a case, W. B. Cook, tax collector & Police Jury of St. Tammany v. Dendinger, 38 La. Ann. 261, that in 1883 the town, acting under the provisions of Act No. 110 of 1880, amended its charter exempting the town from the power of the police jury over woods, roads, and highways and the imposition of parish taxes and licenses, but the report of the case does not indicate any change made in the provisions of Act No. 327 of 1852, sec. 7, concerning its jurisdiction over the public landings and wharves and the right to alter and repair the same when necessary.

There is nothing in the record which indicates that the town of Madisonville has ever seen proper to adopt for its government Act No. 136 of 1898; section 40 of which provides that existing municipalities can only come under the provisions of this act as the result of an election.

We therefore assume, in the absence of any showing to the contrary, that the town is still governed by the provisions of Act No. 327 of 1852 and according to which the repair of the public landings and wharves belonging to the town should be performed by the town when necessary, and it follows that failure to repair when necessary renders the town liable in damages for injuries caused by its negligence.

The mayor, Mr. Oulliber, testifies that the wharf in question belongs to the town. With reference to the pavilion in which the accident to the plaintiff happened, he says in answer to questions:

"Q. Who had a right to put a pavilion there?
"A. The town of Madisonville bought it from the Jahncke Service Co."

We take it that his answer means that the town owns the pavilion. The ownership of the pavilion by the town further appears by evidence introduced showing that before the accident to plaintiff the town authorities had carpenters to repair the floor of the pavilion. It appears that they took various pieces of old flooring and put in new pieces, but the work was not finished, and the town authorities, owing to the unfinished repairing and dangerous condition of the pavilion floor, directed the carpenters to put up barricades around it so as to keep people and cattle out of it until the work could be finished. A proper inference from the testimony on this subject requires the conclusion that the town authorities knew that the floor of the pavilion was rotten and dangerous to be walked on. They started to have it repaired previous to the trip of the Susquehanna and the arrival of the excursionists in question, but for some unexplained reason the work was temporarily discon-

tinued and the carpenters were directed to barricade the pavilion in such way that people could not get into it, the purpose being of course to keep people from getting in there and getting hurt due to the condition of the floor.

There is no reasonable doubt on this subject. A claim adjuster named Stewart came over to Madisonville to investigate the accident that had happened to the plaintiff and called on Octave J. Oulliber, the mayor. He testified that Mr. Oulliber admitted to him that the wharf was dangerous.

Mr. Oulliber was on the stand and gave his testimony as a witness in behalf of the town after that of Mr. Stewart had been introduced. He was not asked about this statement imputed to him by Stewart, and it was not denied. If it had been untrue, it would almost certainly have been denied. Giving effect to the statement of Mr. Oulliber that the wharf was dangerous, he must have had reference to the floor of the pavilion, because the accident was in the pavilion. It was the pavilion floor that had been left in a state of unrepair. There is nothing in the record which indicates that the floor of the balance of the wharf was in need of repair. It therefore seems from the remark of Oulliber that he looked on the pavilion floor as a part of the wharf, and it is our conclusion that it must be so regarded.

The evidence shows that this pavilion is a two-story structure, fronting and back about twenty feet distant from edge of the river. The upper floor is used for dancing, but the lower floor has benches in it, to be used as seats, and the facts and circumstances indicate very strongly that the lower story in which were the benches, roofed over by the top of the pavilion, was a place equipped with seats where people awaiting the coming or the departure of vessels could rest protected from sun and rain.

The town denies in its answer that plaintiff was injured on the wharf, but it does not aver that she was injured in the pavilion, and that the pavilion was not part of the wharf. The case was tried, not so much on the theory that the floor in the pavilion was safe, but rather on the theory that it had been barricaded in such a way that the excursionists could not get into it except by going over or under it or by breaking down the barricade after warning by the captain of the Susquehanna as they left the boat to go around it.

The contention of the plaintiff is that the pavilion was open; that the excursionists in leaving the vessel walked through it and in returning did the same, and sat down on the benches. That she saw no barricade, heard no warning from the captain, that it was open, and she entered it on her return. Others were in it, and she stopped to talk to a friend, when the plank on which she was standing still while speaking broke under her weight, causing the injury alleged in her petition.

The evidence concerning a barricade is conflicting; as showing the grounds of our conclusion we quote from the testimony as follows:

Miss Yvonne Boudreaux, daughter of plaintiff, at the time of testifying about 18 years old, says she was present at the time of the accident. That it occurred on the wharf where all the passengers were walking. The testimony of the witness is not to be regarded as incredible because she says it occurred on the wharf; it rather

seems from her testimony that she saw no barricade about the pavilion; that the lower story of the pavilion was open. Other excursionists were walking about therein; that no difference existed that she could see, separating the floor of the pavilion from that of the balance of the wharf; that as she remembered conditions at the time of testifying, which was about two years after the accident, it occurred in an open space, not in a barricaded area.

Mrs. R. C. Morgan, one of the passengers on the boat, a friend of the plaintiff not otherwise interested in the result of the suit, was near plaintiff at the time she got hurt, saw the accident, gave testimony on the subject. She says that when she returned from the town they were all standing on the landing and a plank gave way and plaintiff's leg went through. Her testimony was taken about two years after the accident. She says that it was not in the pavilion, but on the wharf; she remembered a pavilion, but could not remember whether in coming back to the boat she came through it or not, but she went over the place where plaintiff got hurt. Her testimony does not seem to be incredible. It rather creates the impression that there was no barricaded area; that every part of the wharf was open, and that the pavilion floor may be regarded as part of the wharf structure. She heard no warning from the captain that the excursionists were to go around the pavilion to get on the street.

Mrs. Boudreaux, the plaintiff, says that on returning to the wharf for the purpose of re-embarking that she stopped in the pavilion to talk to some girls seated on a bench. Others were there, and there were no barricades. That the benches on which the girls were seated were inside the pavilion; that she was standing up talking to them when the plank on which she was standing broke through, causing her injury. That no warning was given to her on leaving the boat to go around the pavilion.

Mrs. Legion, friend of the plaintiff, passenger on the boat, present, standing facing Mrs. Boudreaux when she got hurt, says that there were no barriers. That when she left the boat she walked through the pavilion and came back the same way. That Mrs. Boudreaux, in coming back on the wharf, stopped to talk to girls seated on benches inside the pavilion; others were there, and while talking to them the plank under her broke and she received the injury of which she complained. That the space in which it happened was open, there was no barricade; that she heard no warning from the captain or anybody else when she disembarked to reach the street by going around the pavilion.

Earl Galatas, called and questioned by defendant, a resident of Madisonville and apparently without interest in the result of the suit:

"Q. Were you there when the plaintiff, Mrs. Boudreaux, met with this accident, etc.?

"A. I was sitting on the end of the bench looking toward the boat. I heard a lady holler and I looked around as this lady went through the floor," etc.

He jumped and with others assisted in extricating her by prizing up a couple of planks.

The evidence shows that the bench on which Mr. Galatas was seated was inside the pavilion; therefore the pavilion must have been open; else, how did he come to

be on the inside and seated with others on the benches?

Further questioned:

"Q. The real passage from the boat to the landing ground on the wharf was not the pavilion?

"A. Either way they wanted to go, the wharf or the landing the way they go. I think it is barricaded on the south end, the pavilion is barricaded, unless they had taken it down before I got there. It was about 10 minutes after the boat landed when I got there.

"Q. What was barricaded?

"A. The other end; all the passengers were off the boat when I got there."

In saying, the other end, the witness evidently refers to one of the ends of the pavilion.

Manuel Prieto, a resident of Madisonville apparently without interest, called and questioned by defendant, says that he was within five or six feet of plaintiff when she got hurt, sitting there on the bench, etc. He further says:

"Q. How do passengers from boats move off the wharf into town—do they have to go through the pavilion or not?

"A. There are two ways to get off. It was open to the south to go on the wharf around the pavilion. The pavilion was barricaded. *but when I went there it was all open; had been torn down,*" etc.

The testimony of Messrs. Galatas and Prieto so corroborates the other witnesses from the city, counting the plaintiff, that we feel that there can be no reasonable doubt that there was no real barricade around the pavilion. It seems necessary to conclude that it was open to the excursionists, residents of Madisonville, sharing with them the benches under the overhead pavilion.

It is well to remark that these excursionists were school girls and their mothers. There were no men nor boys accompanying them. It is not to be supposed that these elderly ladies and school girls would have neglected the instructions from the captain to reach the street by going around the pavilion if they had heard any such instructions on leaving the boat. And it is so unlikely that they broke down barriers around the pavilion or got over or under a real barricade, that we do not feel that such a contention can have any merit. The area under the pavilion was open when the excursionists arrived and re-embarked, according to the testimony of Galatas and Prieto, residents of the town seated on the benches at the time the excursionists returned to the boat.

There is no averment in the answer of the town nor evidence to justify an inference that persons without authority or knowledge of the town officials tore down the barriers and opened up the lower part of the pavilion giving the excursionists access to the benches.

There is no evidence that the town officers were without fault for the existing condition; that it was not due to their neglect and carelessness that the dangerous situation existed.

A Mr. Albert (his other name is not stated) witness for the defendant, resident of Madisonville, says that he was within three feet of the plaintiff, saw her when she got hurt, assisted Messrs. Galatas and Prieto in extricating her from the predicament she was in due to the plank breaking under her weight. He declares that the pavilion was barricaded; he advised that it be done. He claimed to have been present when the passengers disembarked and to

have heard the captain warn them to go around the pavilion in going to the street; that plaintiff received her injury before going uptown. That she went uptown and came back to the boat showing no signs of injury, etc. If he advised that the pavilion be barricaded, it is not unlikely that he advised the proper officers of the town, which if true, indicates their previous notice of the dangerous condition of the pavilion floor and the necessity of keeping people off of it. If he was within three feet of the plaintiff, saw her fall into the hole, and assisted in pulling her out of it, as he says, it seems not unlikely that he too was inside the pavilion. He does not say that he was inside, but he does not speak of breaking down any barrier or going over or under in order to reach her.

R. J. Breedlove, captain of the boat, says that the pavilion was barricaded when the boat landed. That he saw the barricade and directed the passengers in a loud and audible voice as they disembarked to get into the street by going around the pavilion.

The captain was not a witness to the accident, at least he does not speak of seeing it; yet, if plaintiff was hurt immediately upon leaving the boat, as stated by the witness Albert, and after the captain had made proclamation directing them to reach the street by going around the pavilion, it seems rather unlikely that the accident could have happened at that time without coming under his notice.

Captain Breedlove and the witness Albert are the only parties of the many who were present when the boat landed who testified to the declaration of warning, and that the pavilion was barricaded at the time. Their testimony as to the barricade must be regarded as disputed by five wit-

nesses and of the 420 passengers on the boat; not one, nor other officer nor member of the crew, supports them in the matter of the warning which the witness Albert and himself says was given.

Adam Heiser, a workman resident of the town, says he helped repair the floor of the pavilion and helped barricade it, but he was not present at the accident and could not remember whether the barricading was before or after the accident. He did not examine the barricade after the accident.

Willie Heiser, also worked at repairing the floor and barricading the pavilion. He was not present at the accident, but remembered that the barricading was before the accident. He does not claim to have examined the place afterwards.

Mr. Oulliber, the mayor, says it was barricaded at the time, but he was not present at the time of the accident nor immediately afterwards; therefore neither he nor the two Heisers knew the conditions existing at the time of the accident. And as heretofore stated, Mr. Stewart claims that he admitted to him after the accident that the wharf was dangerous, and, we have seen how, in referring to the wharf, it is not unlikely that he had reference to the floor of the pavilion.

The floor of the pavilion is shown to have been in need of repair and the officers of the town are shown to have been aware of the danger due to the floor of the pavilion, but they took no adequate steps to barricade it up so as to prevent people getting hurt as a result of getting into it.

We think it likely from the evidence that some pretence at barricading had been gone through with previous to the time

in question, but the work was so inferior and insufficient that it was about the same as if nothing had been done to keep people from going into the pavilion and sitting on the benches. We find from the evidence that the lower floor of the pavilion was open, and that it was part of the wharf structure, all of which was the property of the town.

We therefore find the town at fault, negligent, and careless for having left such a serious concealed danger open to people when they had a right to expect that it was safe.

In the case Mamie Collins v. City of New Orleans, 3 La. App. 299, a bridge inside the corporate limits had been barricaded, but so insecurely that it did not prevent a person in a hurry from going through the barrier, with the result that he was injured. The court held that the city was responsible in damages.

In the case Fennimore v. City of New Orleans, 20 La. Ann. 124, the duty of the city to keep its wharf in sound condition for public use was considered, and the city held to be liable for not having discharged its duty.

In Cristadoro v. Von Behren's Heirs, 119 La. 1025, 44 So. 852, 17 L. R. A. (N. S.) 1161, the wharf was privately owned. The court considering the duty of the owner said (we copy from the syllabus):

"The owner of a wharf which has collapsed while being put to the use for which it was intended, is responsible in damages to those who were legitimately on it at the time and were injured.

"It makes no difference that the person injured was on the wharf as a guest or visitor of the lessee of the wharf."

"The owner of a building is answerable for the damage occasioned by its ruin,

when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." Civil Code, art. 2322.

From Thompson on Negligence, vol. 5, subject Negligence of Municipal Corporations, sec. 6069, p. 547, we quote:

"When there is a duty to erect and maintain a railing or barrier there is of course a corresponding duty to erect and maintain one that is sufficient and a municipality is liable for an injury received by a traveler through insufficiency of such barrier if it had notice of the defect."

And from same author, vol. I, subject Injuries from Defects in Premises, sec. 1007, pp. 923 and 924:

"The same duty and corresponding liability attaches to the proprietors or lessees of public wharves and piers in case of injury through non-repair or other negligence to any person going thereon upon lawful business. On principle the owners of wharves are held to the same degree of care which attaches to carriers of passengers," etc.

From Ruling Case Law, vol. 28, subject Wharves, sec. 29, we copy the following:

"As a general rule the wharfinger or the proprietor of a wharf, dock, or pier is liable in damages to a person rightfully on or about the premises for an injury sustained by reason of an unsafe or defective condition negligently caused or permitted to exist. This duty extends to invitees, as for example persons going on a wharf to receive a consignment expected to arrive."

The section continues, but we do not see that a further quotation is necessary to the case.

We have come to the conclusion that the captain of the Susquehanna, if he gave any notice to the excursionists while they were disembarking to walk around the pa-

154

vilion in going to the street, it was not sufficient, and was not heard by the plaintiff.

The plaintiff has established her case against the town of Madisonville with sufficient certainty.

The judgment appealed from is contrary to the law and the evidence, and must therefore be annulled, avoided, and set aside, and judgment rendered in favor of the plaintiff.

In regard to the amount, plaintiff's claim is, in our opinion, greatly overstated and her demand largely excessive. We think $600 a sufficient amount on account of the damage sustained.

For these reasons, the judgment appealed from is annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff Elizabeth Shafer, wife of Sidney Boudreaux, and against the town of Madisonville, Louisiana, for $600, with 5 per cent per annum interest thereon from May 27, 1927, until paid.

The plaintiff and appellant to pay half the cost of the lower court.

The town of Madisonville to pay the other half and the cost of appeal.

----

## ON REHEARING

PER CURIAM. The application for rehearing calls our attention to the fact that the judgment allows interest from the date of injury instead of from the date of judicial demand. It is therefore ordered that our former decree be amended by allowing interest from judicial demand, and as amended same is made final and the application for rehearing is refused.