(44 South. 852.)

No. 16,381.

CRISTADORO et ux. v. VON BEHREN'S HEIRS et al.

(Oct. 21, 1907. Rehearing Denied Nov. 18, 1907.)

1. WHARVES—NEGLIGENCE—LIABILITIES.

The owner of a wharf which has collapsed while being put to the use for which it was intended, is responsible in damages to those who were legitimately on it at the time and were injured.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Wharves, § 44.]

2. SAME—PARTIES INJURED.

It makes no difference that the person injured was on the wharf as a guest or visitor of the lessee of the wharf.

3. SAME.

McConnell v. Lemley, 48 La. Ann. 1433, 20 South. 887, 34 L. R. A. 609, 55 Am. St. Rep. 319, in so far as holding that the responsibility provided for by article 2322, Civ. Code, is restricted to neighbors and passengers, is overruled.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Frank A. Cristadoro and wife against the heirs of Ferdinand Von Behren and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Carroll, Henderson & Carroll, for appellants. Frank McGloin and Charles Ferdinand Claiborne, for appellees.

PROVOSTY, J. The petition alleges that Von Behren, of whom the defendants are the heirs, was owner of a so-called "camp," consisting mainly of a platform and a house built over the waters of Lake Pontchartrain, at Milneburg, intended to be used as a place of resort and recreation, and which would be leased for that purpose to all persons desiring to rent it; that Von Behren "employed Mrs. Schmitt, the mother of plaintiff Mrs. Cristadoro, to take care of said camp, rent out the same, and collect the revenues therefrom for him; and, in return and consideration for her service, he agreed and contracted with her that she should live in and occupy and use the said camp as a summer home at all times when the same was not leased to other parties, when she should temporarily go to other quarters, and that she should have the right to receive as visitors at said camp all such friends and relatives as should see fit to visit her there"; that under this agreement Mrs. Schmitt, with the full knowledge and consent of the said Von Behren, received at said camp all persons who saw fit to visit her there; that the sole passage to and from said camp was a wharf connecting it with the wharf of the Pontchartrain Railroad; that the plaintiff Mrs. Cristadoro, having gone on a visit to Mrs. Schmitt, her mother, at said camp, was passing upon the said connecting wharf on her return, when the same collapsed, causing her serious injury; that the purpose of plaintiff in leaving was to secure quarters for her mother for the following Sunday, for which day said camp had been leased and her mother would have to find other quarters under her agreement with Von Behren; "that plaintiff Mrs. Cristadoro was lawfully and properly upon said connecting wharf, and was guilty of no negligence or carelessness, and went to said camp as the relative and guest of said Mrs. Schmitt, who had the right, under her contract with Von Behren, to have plaintiff visit her at the said camp; that said connecting wharf, to the knowledge of said Von Behren, was being used, from day to day, by persons who visited said Mrs. Schmitt at said camp with the view of hiring the same, and by the public generally; that said Von Behren

held out and offered for rent the said camp, with said connecting wharf, as a place of resort and recreation, and it was his duty to have and keep said wharf in good and proper condition; that the same was not in such order and condition, but that the planks, beams, sills, supports, and other timbers and parts of said connecting wharf were rotten, decayed, defective, and in bad order and condition; that the fall and destruction of said connecting wharf were due to the negligence of said Von Behren and to his failure to have and keep the same and all parts thereof in proper order and condition; and that he became liable and responsible to the plaintiffs for all the damage that they have suffered."

The suit was dismissed on exception of no cause of action. In our opinion a cause of action is shown. Mrs. Cristadoro was rightfully on this wharf, and was injured without any contributing fault on her part, and as the result of the negligence of the person whose duty it was to see to the safety of the wharf; that is to say, of the owner of the wharf, Von Behren.

So plain is this that without another word we might proceed to render judgment, were this court expected simply to administer justice and not also to expound the jurisprudence of the state.

The reason, then, why Mrs. Cristadoro was rightfully on the wharf is that she was a guest of her mother, Mrs. Schmitt, and that Mrs. Schmitt had secured by contract with Von Behren the right to receive visitors; and the reason why, she being rightfully on the wharf, the owner of the wharf is responsible to her for the injury she suffered, is that "the owner of a building is answerable for the damages occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction" (Civ. Code, art. 2322)—this provision of the Code being nothing more than an application of the principle that "every person

is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill" (article 2316, Civ. Code).

The learned counsel for defendants very properly say that there must be a duty before there can be negligence; but, when they say that Von Behren did not owe Mrs. Cristadoro the duty to see to it that this wharf was maintained in proper condition for its ordinary use, they fail to take the foregoing articles of the Code into consideration.

True, in McConnell v. Lemley, 48 La. Ann. 1433, 20 South. 887, 34 L. R. A. 609, 55 Am. St. Rep. 319, this court said that the owner's responsibility under that article is restricted to "neighbors and passengers," and does not extend to visitors, or guests—in other words, to those outside, not to those inside, of the house; but that construction was departed from in the more recent case of Schoppel v. Daly, 112 La. 202, 36 South. 322, where the court held the owner responsible to the wife of the lessee.

The reasoning of the Lemley Case is that visitors must be treated as persons to whom "the ordinary rule of trespass or contract would apply"; that is to say, who as trespassers have no recourse, and as contractors have recourse only on their contract. But it stands to reason that a visitor is neither a trespasser nor a contractor.

The court seems to have thought that the recourse of the guest was against the lessee; but what if the lessee has not been in fault? Nay, what if, injured by the same accident, he himself has a cause of action? Would the legal situation be that he would have to respond in damages to the guest, and the owner to him? If so, the absurd result would be that he would have to turn over to his guest whatever he might have recovered from the owner. Under the doctrine of this Lemley Case, if, through gross vice of construction or the gross negligence of the owner, one of

the so-called "skyscrapers" of this city were to collapse, the heirs of a person who had been visiting one of the tenants at the time of the disaster and had perished therein could have no recourse against the culpable owner, but only, if any at all, against the heirs of the innocent and unfortunate tenant.

It may be that, with regard to all those who derive through the lessee the right to be on the leased premises, the lessor may by contract shift from himself to the lessee the duty of seeing to the safety of the building, and may in that way absolve himself from all duty towards the guests of the lessee: but so long as he does not do this, but retains to himself the duty of seeing to the safety of the house, he plainly and manifestly owes that duty as much to those who are rightfully in the house as to those who may happen to be passing by it.

In this Lemley Case the court would restrict article 2322 to neighbors and passers-by, on the score of its being a police regulation of the safety of houses; but, if it is of that character a fortiori ought it to apply to those inside of the house.

The French writers, interpreting article 1386, Code Napoleon, which is the article corresponding with our above-quoted article 2322, say that the responsibility imposed by the article applies only to neighbors and passers-by, and not to those whose relations to the owner are governed by contract. Larombiere on Art. 1386, vol. 5, No. 3, p. 794; Demolombe, vol. 31, No. 659, p. 568; Laurent, vol. 20, No. 644, p. 696; 3 Fuzier-Hermann, p. 917, No. 16; Id. p. 918, No. 32. We suspect the organ of the court in the Lemley Case understood this to mean that the responsibility imposed by article 1386 (our article 2322) is absolutely restricted to neighbors and passers-by—i. e., to those outside of the house—and does not extend to those inside. But such is not the idea intended to be conveyed. What is meant is simply that the relations of those who have

a contract are governed by the contract, and the relations of those who have no contract are governed by the general principles of the law embodied in this and other articles of the Code. In other words, the line of cleavage is between those who have and those who have not a contract, and not between those who are outside and those who are inside of the house. These writers certainly do not mean to say that the visitor has a contract with the lessor, or that he may recover from the tenant when it is the owner that is in fault.

True, these writers do not say expressly anywhere that in such a case the visitor may recover from the owner; but the reason of their silence on that point is that the proposition is too plain to need to be expressed. And it is for that same reason the courts of France have been called upon so seldom to express an opinion in the matter. We do find, however, the following instances:

In the Case of Grosclaude C. Chaubard, the court of appeal of Paris (8 févr. 1896, Journal du Palais, 1899, part 2, 215) held that the owner of the house was liable to a visitor of the tenant for an injury sustained from the unsafe condition of the premises. Says the court:

"Considérant qu'en leur qualité de bailleurs, Le Boucher et Grosclaude répondaient de toute faute commise par eux en cette qualité ou par leurs préposés, non seulement vis-à-vis des locataires, mais encore de toute personne habitant avec ces locataires, au vu et su des bailleurs ou de leurs préposés, et sans opposition de leur part; que, restreindre le droit d'invoquer la responsabilité contre les bailleurs à ceux des habitants qui sont liés à ceux-ci par un contrat de bail, serait méconnaître le principe général posé dans l'art. 1382, C. civ.; que ce droit n'appartient pas seulement, comme dans l'espéce. à tout habitant de la maison où la faute a été commise, mais même aux personnes, visiteurs, fournisseurs et autres, dont la présence peut s'expliquer par un motif légitime, et n'a rien d'abusif," etc.

Again, in the case of Carrien v. Préfet Hautes-Pyrénées, Journal du Palais, 1900, 2 Part., p. 265, the court of appeal of Paris held a municipality responsible for the un-

safe condition of its building to the guests of a choral society, to which it had lent a hall for a concert. The defendant sought to take the case from under the operation of article 1386 (our article 2322) by arguing that there was a contract of loan of the building, and hence that the relations of the parties to the suit had to be governed by contract; but the court curtly said that, true, there was a contract with the society, but none with the guests.

In a note to this same decision, as reported in Dalloz Juris. Gén. 1900, p. 265, 2nd partie, we find the following:

"Tenons donc pour certain que l'art. 1386 ne doit pas recevoir application lorsque la partie lésée est liée avec le propriétaire du bâtiment par un contrat ayant ce bâtiment pour objet.

"Ce n'est pas à dire cependant que l'art. 1386 ne puisse être invoqué par les passants. Il est conçu en termes généraux et doit recevoir application toutes les fois que la chûte du bâtiment a causé dommage à des tiers, c'est-à-dire à des personnes qui n'étaient liées par aucune convention avec le propriétaire du bâtiment. Comment, par exemple, refuser la protection de cet article à la personne qui aurait été blessée par la chûte de la voûte d'une église? Tous ceux qui entrent dans un édifice public et qui sont lésés par sa ruine nous semblent dans une situation aussi favorable que de simples passants."

It is to be noted, moreover, that what was thus said in the Lemley Case, about the responsibility of the owner not extending to a guest of the lessee was really in the nature of an obiter; for the balcony which gave way in that case did not do so as the result of a vice in construction or want of repair, but as the result of a crowd of persons rushing out upon it and bearing it down by a load such as it was not designed to support. The real ground of the decision was, not that the owner, though in fault, was not responsible, but that upon the evidence he was not in fault.

The case of Brodtman v. Finerty, 116 La. 1103, 41 South. 329, has no application. The principle of that decision is that, where the injury results from the failure to make a trifling repair, which the tenant himself should have made, the owner is not responsible, especially to the wife of the tenant.

The learned counsel for defendants argue that, if the condition of the wharf answered the description of it in plaintiff's petition, plaintiff could not have failed to see the danger, and that, if she saw the danger and voluntarily incurred it, she has no cause of action. This contention is without merit.

Judgment set aside, exception overruled, and case remanded, to be proceeded with according to law. Defendants to pay costs of appeal.