His Honor, 'CHARLES P. CLAIBORNE,
rendered the opinion .and decree of the Court, as follows:
This is a damage suit against an owner for injuries resulting from a fallen ballustrade.
*339 Petitioner alleges that she resided in New Iheria; that the defendant was the owner of the property No. 3122-3126 Tnlane Avenue, which he had leased to M. Botnick; that she was on a visit to her daughter, who is the wife of L. Botnick, when on Jan. 28, 1915, at 3 o’clock, P. M., .while she was leaning against the railing of the gallery in the rear of said premises, it collapsed and she was precipitated to the ground and sustained a broken arm and an injured eye; that she had expected to return to her home in New Iberia on that day, but that she was compelled to remain in New Orleans for treatment up to February 11th; that she neglected her business in New Iberia where she carried on a business with her husband; that she has spent money for doctors, medicine; and has suffered much pain; that it was the duty of the owner to maintain the property in proper repairs and in safe condition and but for his failure to do so plaintiff would not have been injured. She claims $1,000 damages.
After an exception of no cause of action had been overruled the defendant .answered. He denied all the allegations of the petition except the lease and averred that under the terms of the lease it was the duty of the lessee to make all necessary repairs.
There was judgment for defendant and plaintiff has appealed.
The lease granted by defendant to M. Botnick contains the following clauses:
“The said premises and appurtenances * * * are delivered in good order, and lessee obligates himself to keep the same in like good order during the term of this lease, and at the expiration of this lease to return same in like good order or to be responsible for failure to do so. * * * No repair shall be *340 due to lessee except suck as may be needed to tbe roof. * * * Lessor will not be responsible for damages caused by leaks in tbe roof, or by any vices or defects of tbe leased property, except in case of positive neglect on lessor’s, part to 'have repairs 'made within a reasonable time after receiving from lessee written notice of such leaks and defects and of tbe damage caused thereby.”
Plaintiff testified that ber daughter is tbe wife of lessee, or in other words that she is tbe lessee’s mother-in-law; that at tbe time tbe accident happened she bad been living in tbe bouse a week or two, because ber daughter was sick and she bad to- come down on that account to be with ber.
Tbe tenant testified that be never- notified tbe owner to repair tbe balustrade. Tbe owner testified that be bad never been notified to that effect.
We gather from tbe testimony that tbe balustrade was some thirty feet long divided, into several sections; tbe railing or top was supported by a newel post, four inches square, at each section and by tbe usual balustrade. Tbe newels were nailed' to tbe flooring. Tbe flooring under tbe newels was slightly decayed from tbe weather; this caused the nails to become rusty and loose, and, when pressure was applied to tbe newel, it was pulled from tbe flooring and ,gave way. Balustrades ¡are built without any other support than tbe nails in tbe newels driven into tbe flooring. There was no testimony as to .any vice in tbe original construction of tbe balustrade. A. carpenter and contractor of 26 years standing testifies that they are built that way. Tbe accident occurred exclusively from a want of repair.
In tbe case of Lewis vs. Pepin, 33 A., 1417, the lessee sued tbe lessor for damages done to ber furniture by *341 leaks in the roof. The lease contained the clause that the lessee should “keep the premises in good order, con-, ditionand repair during said lease.” The Court said that the lessee could not recover for several reasons, the first of which was: “The express understanding of plaintiff (lessee) in her lease to keep the premises in good repair, relieved the defendants (lessors) from the obligation which the law would otherwise have imposed on them, of making repairs to the roof.”
In Torres vs. Starke, 132 La., 1945, the Court said that where a lease provided that the lessor should not be responsible in damages for failure to make repairs except for neglect after reasonable notice, the lessee could not recover damages where he had failed to give such notice and to afford the lessor an opportunity to make the repairs.
It has been the jurisprudence of this State since Scudder vs. Paulding, 4 Rob., 429, in the year 1843, that the lessee has no right to claim damages from the lessor for-losses suffered from the want of repairs when it was the duty of the.lessee under the law to make the'repairs.
Bianchi vs. Del Valle, 117 La., 587 (591) and authorities quoted therein.
We have not been able to find any case in which a plaintiff other than the lessee was suing the lessor under a lease by the terms of which the lessee assumed the duty of making the repairs, in order to determine who, besides the lessee, was bound by the terms of the lease. But in the case of Schoppel vs. Daly, 112 La., 212, where the wife of the lessee was allowed damages, the .Court said:
“It may be that the occupants of the building by reason of the character of their occupancy, may have come under some obligations as to the condition of *342 the premises from which, strangers are absolutely freed. ’ ’
In Christadow vs. Behren, 119 La., 1029, the Court intimated :
“It may be that with regard to .all those who derive through the lessee the right to be on the leased premises the lessor may by contract shift from himself to the lessee the duty of seeing to the safety of the building.”
In accord with this line of thought, the Supreme Court of this State in Bianchi vs. Del Valle, 117 La., 587, ruled that the wife of the lessee could not recover when it was the duty of her husband, under the law, to. make the repairs, on the theory that she derived her right to be on the premises from the lease, and that she was bound by its terms.
This principle was reaffirmed in Brodtman vs. Finnerty, 116 La., 1103, where it was held that when the husband could not recover neither could the wife. The S3dlatus of the case prepared by the Court reads:
“The head of the family represents the family. If he, a tenant, is without right of action because of his failure to make the repairs, although he had the right to make them, the members of the family occupying the dwelling are equally as concluded.”
"We have no doubt that this is correct law. Not only the lessee but each member of his family occupying the premises by virtue of the lease are protected by its provisions. Oui sentit commudum debet sentir© et onns. Otherwise t'he anomaly would be presented of a person occupying premises without a contract being entitled to more rights and better protection than the lessee by virtue of a contract.
*343 Opinion and decree, April 14th, 1916.
The plaintiff was the mother-in-law of the lessee and as snch was a member of his family. If the lessee could not recover, neither could she. Under the terms of the' lease it is evident the lessee had no cause of action.
C. C., 3556 (3522) Sec. 12:
‘‘ Family, in- a limited sense, signifies the father, mother and children. In a more extensive sense, it comprehends all the individuals who live under the authority of another and includes the servants of the father of a family. It is also employed to signify all the relations who descend from a common root. ’ *
A “family” is a collective body of persons living in one house, and under one manager. It consists of those who live with the pater familias. -The word-is often used interchangeably with “household.”
2 Words and Phrases, Series p. 46Í.
The word “family” means the collective body of persons who form one household under one roof, one head, and one domestic government.
Century Dictionary, Vo. Family. Larousse vo. Famille.
‘ ‘ The word family sometimes includes all who live in one household and under one head, even boarders and lodgers.”
Block vs. Ocean Accident, etc. Co., Count of Appeal Reports, Vol. X, p. 284.
Judgment affirmed.