BARHAM, Justice.
Mr. and Mrs. Billy R. Cothern sued for damages for an injury sustained by Mrs. Cothern when she fell on the night of April 3, 1965, on the premises of the Travel Inn Motel. The accident happened as the Cothern family were alighting from their automobile in order to enter Jim’s Place, a restaurant adjacent to the motel. The defendants in the suit are Mr. and Mrs. J. M. Lavigne, owners of the motel, and their insurer, Employers’ Liability Assurance Corporation, Ltd. (mistakenly referred to in the petition by another name), and Peter J. LaRocca, lessee-operator of the restaurant, and his- insurer, Fireman’s Fund American Insurance Companies. The trial court gave judgment for the plaintiffs against the Lavignes d/b/a Travel Inn Motel and their insurer for $2573.50, but dismissed the plaintiffs’ claim against LaRocca d/b/a Jim’s Place and his insurer. The Court of Appeal reversed the judgment of the district court but rendered judgment for plaintiffs for the same amount against LaRocca and his insurer. 221 So. 2d 836. We granted writs on application of the plaintiffs, who seek to hold all defendants in solido, and on the'application of LaRocca and his insurer, who seek reversal of the judgment against them.
Jim’s Place is a restaurant fronting on Airline Highway in Jefferson Parish, which had been leased by LaRocca nine days before the incident with which we are concerned. Shell-surfaced parking areas to the front and rear of the restaurant are connected by a shell driveway on each side of the building. The properties to the right and to the rear of the restaurant are separated from the restaurant premises by cyclone fencing.
Important for our consideration is the exact nature of the area in the vicinity of the boundary line of the property to the left, or Baton Rouge, side of the restaurant. This abutting property is owned by the Lavignes, who’ operate the Travel Inn Motel there. The rear wall of the motel, which runs at right angles to the highway, is five feet from the actual boundary between the two properties and approximately six feet from the shell-surfaced driveway. It is apparent from the - numerous photographs in the record that from the rear parking area of the restaurant up to Airline Highway there is a definite demarcation where the shell-surfaced drive meets a heavy growth of grass between it and the rear wall of the motel. Parallel to the driveway are sections of stakes, posts, or markers placed at intervals. A number of individual air conditioning units project several feet from the motel’s rear wall álong its entire length. Near the center of this rear wall a trellis runs the 'height *680 of the motel from the ground and projects approximately the full five feet to the boundary, where a concrete foundation footing, several feet long, also runs parallel to the driveway. It would appear that the stakes or posts and the concrete foundation footing, which are aligned, mark the boundary of the properties, and we find that they are there for that purpose. Toward the front of the restaurant property and along this boundary are two tall poles which suspend the restaurant’s large lighted sign.
On the night of the accident Mr. Cothern drove his wife and children to Jim’s Place for dinner. Being unable to find parking space either in the front or in the rear of the building, he drove from the rear toward the front on the driveway which runs between the restaurant and the motel, and parked his compact car immediately behind the poles suspending the sign, in an indeterminate but limited space between the sign and the concrete footing near the trellis. Mr. Cothern, in order not to block the driveway, parked his car with the right side extending over and onto the motel property. When Mrs. Cothern stepped from the right side of the car and was moving to open the right rear door for her children, she stepped into a hole, fell, and injured her leg. This hole, a concrete sleeve, pipe, or opening eight inches in diameter, giving access to a shut-off valve on a water line connected to the motel, was upon motel property approximately 18 inches from the rear wall of the motel and three and one-half feet from the property line.
At the time of the accident it was difficult to see the hole because the grass was several inches high around it. Normally this opening was covered by a metal shield to which wooden pieces had been attached, and the cover, when in place, would safely support one walking upon it. Except for the wooden attachments which were designed to make it more stable and immobile, the cover was apparently similar to those commonly used to give access to cut-off valves for gas and water and to sewerage lines upon private properties and neutral grounds. Although the cover was missing at the time of the accident, neither the motel manager nor the owners had knowledge that it had been removed.
The trial court and the appellate court concluded that the motel manager was aware that customers for the restaurant had parked upon previous occasions in the area of the hole. As we have already noted, the defendant LaRocca had leased the restaurant premises only nine days before the accident. He had no knowledge of the concrete hole or the parking practices in that vicinity, and in fact did not know the exact boundary between his property and the motel.
Plaintiffs urge us to apply Articles 670 and 2322 of the Civil Code in order *682 to assign liability to the motel owners and their insurer. Article 670 reads: “Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers [passersby], under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.” We conclude that this article has no application to the situation at hand, for it is designed for the protection of those upon neighboring property or public thoroughfares from damage resulting from the fall of a building or portion of a building, and is inapplicable when the one injured is upon the property itself.[1]
The article which establishes an owner’s liability to one who is actually in and around a building upon the premises for damages caused by ruin of or defect in the building is Article 2322.[2] It provides : “The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.” (Emphasis supplied.) The Court of Appeal in rejecting the application of Article 2322 to the owners of the Travel Inn Motel first expressed its conclusion that the absence of the metal cover over the concrete pipe was not “ruin” of a “building” under Article 2322. However, it then discussed at considerable length the application of the common law distinctions of status to this particular Code article — that is, the distinctions in the duty of care owed to the trespasser, the licensee, and the invitee. We reject *684 the application of these common law distinctions to Article 2322, which defines a particular, strict delictual liability. We have held repeatedly that the only requirement of status for one upon the premises as relates to the right of action for damages occasioned by the ruin of a building or a vice in its original construction is that the person be lawfully and rightfully upon the premises.[3] The common law distinctions in status are not applicable to this right of action.
It is our conclusion, however, that the Court of Appeal was correct in stating that the failure to have the cover upon the concrete pipe or hole was not a ruin of a building within the contemplation of Article 2322. The word “building’’ has been held to encompass a wharf or walkway over water which gave access and was attached to a camphouse.[4] This court has held, and we adhere to the rule, that necessary appurtenances to structures and movables made immovable by attachment, which are defective or have fallen into ruin, also may be included within that term “building”.[5] We readily admit that structures not necessarily intended for human habitation may be comprehended as buildings within Article 2322.
However, Civil Code Article 2322, which-imposes a duty of care and an obligation different in degree from the general limits-of Article 2315 and which holds one accountable to all classes of persons lawfully upon the premises, should not be extended, to include an aperture in the ground giving access to plumbing, to water pipes, or-to gas pipes. Neither the opening, that is,, the concrete pipe, nor the cover for it was an attachment to or appurtenance of any part of the building or structure. It was-simply a common device such as is located upon most property for the convenience of owners and workmen to reach cut-off valves and to service underground plumbing.
We then conclude that the liability of the owners of the motel, if any, is to be determined under Civil Code Articles 2315 and 2316. For the purpose of determining the duty of care owed by an owner or occupier of premises to those upon the premises, our jurisprudence . has grafted onto these articles the common law classifications of trespassers, licensees, and in *686 -vitees. The encroachment of the Cothern car and the presence of Mrs. Cothern upon the narrow strip of land immediately to the rear of the motel gave no benefit to .and served no purpose of the motel. The proof is strong that there was not even an implied invitation by the owners of the motel premises to the plaintiffs, and that they were not invitees.
However, the knowledge of the manager of the motel, imputed to the owners, that patrons of the restaurant parked at times in the vicinity of the hole and the .■owners’ failure to restrict this use gave .•implied consent sufficient to establish the plaintiffs as licensees. Therefore the duty owed by the motel owners to Mrs. Cothern, ■a licensee, was to refrain from wantonly and willfully injuring her or to warn her ■of those non-apparent defects or dormant -dangers on the premises which were within their actual knowledge. We conclude, as did the Court of Appeal, that the hole with its cover as originally designed presented no latent dangers but was in fact of a safe construction. It was the absence of the ■cover from the hole, which was unknown •to the owners, that caused Mrs. Cothern’s .injury. The owners of the Travel Inn ■Motel and their insurer are not liable for , .the damage suffered.
A more difficult problem is presented with regard to the liability of LaRocca, the owner of Jim’s Place, and his insurer. LaRocca’s liability, if any, also arises under our general delictual articles, and there can be no doubt that if Mrs. Cothern had been upon his premises at the time of her injury, she would have been one of a class responding to an invitation to do business with him for his advantage, an invitee, to whom he owed reasonable and ordinary care including reasonable activity to discover and correct or warn of dangerous conditions upon his premises. As we have previously noted, however, the injury to Mrs. Cothern occurred entirely upon' the property of the motel.
The Court of Appeal recognized the general principle of law that a lessee, occupier, or owner owes only to invitees upon his premises the reasonable care of providing a safe place for them upon that property. That court, however, relying upon cases from other jurisdictions,' extended the defendant LaRocca’s obligation of providing safe premises to property not owned or occupied by him.[6] The Court of Appeal stated that it could not say that those cases were factually apposite. We in fact find them distinguishable and inappo *688 site. In all of those cases the possessor of the premises had knowledge of obvious and unusual dangerous conditions upon adjacent property. In one of the cases the possessor created the defective condition on the property immediately abutting his parking area. In the other two cases, adjoining parking lots were indistinguishable one from the other, and the patrons of one were impliedly if not expressly invited to use the other parking lot for pedestrian entrance.
We are not here called upon to determine whether a possessor who actually knew or should have known of a dangerous condition upon adjacent property which threatens his invitees’ safety by reason of their customary use of that property will be held liable for their resulting damage. We must simply determine whether there was a breach of duty of care — negligence—by the defendant LaRocca under the factual circumstances of this case.
The pertinent facts of the instant case are these: LaRocca, the restaurant owner, did not know that invitees of the restaurant sometimes parked on the motel property. No invitation, either implied or expressed, had been extended to his invitees to use the abutting premises. He did not know of the existence of the uncovered hole on the adjacent premises and could not, even with reasonable inspection from his own premises, have readily, if at all, discerned the hole in the tall grass. We conclude that under these facts LaRocca owed no duty to protect Mrs. Cothren from this unknown defect on the adjoining property.
For the reasons given, the judgment of the Court of Appeal is reversed and set aside, and the suit is dismissed as to all defendants at plaintiffs’ costs.

. Article 670 is found under the title “Of Predial Servitudes or Servitudes of Land”, but like Article 669 it does not create a true servitude. (See Reymond v. State of Louisiana Through Department of Highways et al., decided January 20, 1970, at footnote 6, La., 231 So.2d 375.) It has no corresponding article in the Code Napoleon. In Moreau Dis-let’s copy of A Digest of the Civil Laws (de la Vergne Volume, Reprint 1968), his source notes to Articles 18 and 19, Book II, Title 4, Chapter 3, of the Civil Code of 1808 (Articles 670 and 671 of our present Code), give references to Las Siete Partidas, Part 3, Title 32, Laws -10, 12, and 25, and Part 3, Title 30, Law 15, and to Domat, Lois civiles, Volume 1, Part 1, Book 2, Title 8, Section 4, Laws 1 and 2. While the Spanish adopted the Roman theory .of giving possession to a neighbor of a building about to fall (partaking somewhat of the noxal action), according to Domat the French rejected that theory and recognized the right of action against the owner to cause him to repair the building and to be awarded damages for injury resulting from its fall in the meantime according to circumstances. The French Code failed to incorporate a comparable law.

. Code Napoleon Article 1386 is the source of our Civil Code Article 2322. Early Louisiana jurisprudence, erroneously interpreting the French application of Article 1386, attempted to place the limitation “neighbors” and “passersby” into our Article 2322. See McConnell v. Lemley, 48 La.Ann. 1433, 20 So. 887, which was expressly overruled in Cristadoro v. Von Behren’s Heirs, 119 La. 1025, 44 So. 852.

. See Cristadoro v. Von Behren’s Heirs, supra; Allain v. Frigola, 140 La. 982, 74 So. 404; Ciaccio v. Carbajal, 145 La. 869, 83 So. 73; Klein v. Young, 163 La. 59, 111 So. 495.

. Cristadoro v. Von Beliren’s Heirs, supra. Cf. Tucker v. Illinois Central Railroad Co., 42 La.Ann. 114, 7 So. 124, and Quintell v. Ferran, 147 La. 153, 84 So. 570. We believe these cases only to involve Article 670; however, obviously the word “building” has the same meaning in Articles 670 and 2322, and the extension to “sheds” would be equally applicable under either article.

. Dunn v. Tedesco, 235 La. 679, 105 So.2d 264, 84 A.L.R.2d 1184.

. Chapman v. Parking, Inc., Tex.Civ.App., 329 S.W.2d 439; Gray v. Watson, 54 Ga.App. 885, 189 S.E. 616; Gladwin v. Hotel Bond Co., 19 Conn.Sup. 105, 110 A.2d 481. See also Bass v. Hunt, 151 Kan. 740, 100 P.2d 696. There are also many cases assigning a duty of care to the possessor of premises to his invitees beyond liis premises at the place of ingress and egress.