309 So.2d 297 (1975)
Ben MUDD, on behalf of the Community and Olga Mudd
v.
TRAVELERS INDEMNITY COMPANY.
No. 55106.
Supreme Court of Louisiana.
February 24, 1975.
Rehearing Denied March 31, 1975.
*298 Robert P. Hogan, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, for defendant-applicant.
John B. Scofield, Scofield, Bergstedt & Gerard, Lake Charles, for plaintiff-respondent.
MARCUS, Justice.
This suit was filed by Ben and Olga Mudd for damages sustained as a result of personal injuries suffered by Mrs. Mudd while operating a lawn mower on property owned by their son-in-law, Roland Trosclair, and medical expenses incurred by Mr. Mudd on behalf of his wife. Named as the single defendant was Travelers Indemnity Company, the liability insurer of Trosclair. Defendant answered by way of general denial and further alleged the plaintiffs' negligence (whether contributory or sole) to be a proximate cause of the accident.
The matter was tried before a jury, which, by special verdict, found defendant's insured, Roland Trosclair, to be guilty of negligence that was the proximate cause of the accident and plaintiffs to be free of contributory negligence. The jury further found Mrs. Mudd to have sustained damages in the total amount of $15,000.00 and allowed Mr. Mudd to recover the medical expenses of his wife in the amount of $2,000.00. Pursuant to these findings, the trial judge rendered judgment against defendant and in favor of plaintiffs for the stipulated amounts, plus costs.
Defendant appealed the judgment to the court of appeal, which in a two-to-one decision, affirmed the trial court's judgment. Mudd v. Traveler's Indemnity Co., 295 So. *299 2d 540 (La.App.3d Cir. 1974). Upon defendant's application, we granted a writ of certiorari to review the judgment of the court of appeal. 301 So.2d 44 (La.1974).

FACTS
The property upon which the accident that forms the subject of this litigation occurred is a 42-acre tract of farm land located near Ragley, Louisiana that was purchased by Roland Trosclair as a second home in February, 1971. Trosclair's permanent residence is in the village of Cameron, Louisiana, where he operates a canning company. Shortly after the purchase, Trosclair began to visit the tract on weekends with the Mudds, his wife's family from Lake Charles, and eventually placed them in full care of the house and surroundings. In exchange, the Mudds were to live on the farm, gratuitously, paying neither rent nor utilities. Because the Mudds still had two school age children residing with them, their visits to the farm were initially limited to weekends and holidays during the school year. Once school was out, they moved to Ragley for the entire summer.
Sometime in late spring of 1971, Trosclair brought his two-year-old riding lawnmower from Cameron to the Ragley property, leaving the mower in the care of the Mudds for their use in cutting the grass. The mower was used all through the summer to cut grass growing in the yard and a five-acre pasture on a weekly basis. The Mudds moved back to their home in Lake Charles at the end of the summer, again limiting their visits to weekends and holidays. The seasonal change diminished the amount of maintenance required on the property; mowing was done on approximately a monthly, rather than weekly, basis.
The accident that caused Mrs. Mudd's injuries occurred on Saturday, November 27, 1971. The Mudds had gone to the farm to spend the Thanskgiving holidays there. That Saturday, Mrs. Mudd began to use the lawnmower to cut the grass growing in the backyard while her husband and children left to run errands. In the course of mowing, she encountered a bucket and hose laying in her path. She stopped the mower by shifting the gears from forward to neutral, disengaged the mower blades, got off the machine, and walked in front with her back to the mower to move the obstructions. By her own account (Mrs. Mudd was the sole witness to the accident), the mower somehow jumped from neutral into forward gear and struck her from behind, knocking her down with sufficient force to cause a comminuted fracture of the left patella (viz., kneecap), a fracture of the great right toe, and various lacerations of her legs and feet. Mrs. Mudd then lay in the backyard helpless for approximately half an hour awaiting the return of her family. The mower continued to run after striking her and finally lodged against a tree, where it was found upon the family's return with the motor still running.
Mrs. Mudd was immediately taken to a hospital, where surgery was performed that evening. Her patella was removed, her lacerations were tended, and her left leg and right toe were placed in casts. Upon her release from the hospital, she underwent physical therapy briefly and, according to her doctor, today suffers little functional disability. This suit was filed on May 15, 1972.

ISSUES
The issue immediately confronting us in this case concerns the applicable law that governs the legal relations among the parties. Once we determine what legal duty of care or standard of conduct was owed by Trosclair to the Mudds under these circumstances, we can then decide whether there was, in fact a breach of that duty such as would render Trosclair's liability insurer, Travelers, liable for the damages sustained by the Mudds.

*300 I.
In its review of the judgment of the trial court, the majority of the court of appeal panel determined that Mrs. Mudd's status on Trosclair's land was that of an invitee. Accordingly, the duty of care to which Trosclair was held was to warn Mrs. Mudd of any concealed or hidden defects or perils of which she was unaware and of which Trosclair knew or should have known in the exercise of reasonable care. In finding that Trosclair's conduct fell short of the legal standard, the court noted that he had used the mower for two years prior to placing it on the premises at Ragley; during that time, he removed a safety guard or bar from the housing of the mower and admitted that, when encountering heavy grass, the mower on occasion slipped from forward to neutral gear, causing it to stop. It was from this evidence that the majority concluded that Trosclair had breached his duty to warn Mrs. Mudd of defects in the mower of which he knew or should have known in the exercise of reasonable care.
The dissenting judge was unable to agree with either the majority's classification of the legal relations of the parties (preferring to characterize the transaction between Trosclair and the Mudds as a loan for use, governed by articles 2893 through 2909 of the Civil Code) or its conclusion that Trosclair was or should have been aware of the defects that caused the accident. Moreover, he found, contrary to the majority, that both plaintiffs were guilty of contributory negligence, which would bar their recovery. Mudd v. Travelers Indemnity Co., 295 So.2d 540, 546 (La.App.3d Cir. 1974) (Hood, J., dissenting).
The conflict between the majority and dissenting opinions of the court of appeal crystallizes the issue confronting us, viz., under the circumstances presented here, what is Trosclair's duty of care to the Mudds? The obligations imposed upon persons by the law of delict in Louisiana differ according to their relationships with one another under a given set of facts. Hence, we must determine whether, in placing the mower on the premises for their use, the relationship between Trosclair and the Mudds was that of an owner of an immovable and persons on the premises or a lender and borrowers of a movable. Additionally, beyond any special rule that provides a standard of conduct for parties enjoying a particular status, Trosclair's conduct must then be evaluated according to the general standard of conduct owed by each person to the public at large, which obliges us to repair whatever damage is caused by our fault. La.Civil Code arts. 2315, 2316 (1870), as amended by Acts 1960, No. 30, § 1.
The appropriate basis of an owner's delictual liability is found in articles 2315 through 2324 of the Civil Code, which contain the general rules of delict. Article 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
(Emphasis added.) See also La.Civil Code art. 670 (1870); Comment, Article 2322 and the Liability of the Owner of an Immovable, 42 Tul.L.Rev. 178 (1967). By its terms, article 2322 expressly limits one's liability as an owner to damages caused by the "ruin" of his "building."[1] The jurisprudential definition of the word "building" as used in article 2322 is largely undeveloped and, hence, is circumscribed by vague contours.[2] However, inherent in the term is a fundamental requirement that *301 there be a structure of some permanence.[3] Clearly, an allegedly defective lawnmower does not constitute a "building" within the terms of article 2322; hence, liability for damages resulting from the use of the mower cannot be imposed on the basis of this article.
Where, as here, one person loans a movable to another, the legal relations between borrower and lender vary under the Civil Code according to whether the loan is made for compensation or in gratuity. Where the lender receives compensation, the transaction is properly characterized as a letting or hiring of a movable. La.Civil Code arts. 2669-2676, 2894 (1870). Where the loan is gratuitous, the transaction is regarded as a loan for use. Id. arts. 2893-2909. More particularly, article 2893 provides that
[t]he loan for use is an agreement, by which a person delivers a thing to another, to use it according to its natural destination, or according to the agreement, under the obligation on the part of the borrower, to return it after he shall have done using it.[4]
The articles that follow further describe the transaction and delineate the obligations imposed upon both borrower and lender. Relevant to our inquiry here is article 2909, which provides that
[w]hen the thing lent has defects of such a nature that it may occasion injury to the person who uses it, the lender is answerable for the consequences, if he knew the defects and did not apprise the borrower of them.

(Emphasis added.) Because of the gratuitous nature of the loan, the lender is not held responsible for injuries incurred by the borrower as a result of defects in the thing lent unless he possessed actual knowledge of them. See Hall v. Continental Drilling Co., 245 F.2d 717 (5th Cir. 1957); Lancaster v. Jordan Auto Co., 121 F.2d 912 (5th Cir. 1941); accord, 2 M. Planiol, Traite elementaire de droit civil no. 2057 (lie ed. 1939 La.St.L.Inst.transl. 1959). Thus, the gratuitous lender is favored over one who lets a movable for compensation; in the latter case, the lessor must guarantee the lessee against all vices and defects of the thing and must indemnify the lessee for losses caused thereby, even if "... he [the lessor] knew nothing of the existence of such vices and defects." Id. art. 2695.
Considering the facts and circumstances of this case in light of these rules, it becomes apparent that Trosclair's action in placing the lawnmower on the premises for the gratuitous use of the Mudds constituted a loan for use. The elements enumerated in article 2893, supra, which defines the loan for use, were all present: the delivery of the mower resulted from a tacit, if not express, agreement by the Mudds to use it "according to its natural destination," viz., to cut grass growing on the premises. Hence, as a gratuitous lender, Trosclair's legal duty of care was that provided by article 2909, viz., to warn of *302 known defects in the mower that might injure its users.

II.
Evaluating the evidence by this standard of culpability, we are unable to find that Trosclair breached his duty of care as a gratuitous lender to the Mudds. It is undisputed that neither Trosclair nor anyone else had ever known the mower to jump from neutral to forward gear; only the reverse, i. e., forward to neutral, had happened when Trosclair, a 250-pound man, rode the mower into heavy grass. The combination of his weight and the heavy undergrowth apparently caused the mower to slip from gear and to stop; even if present at the time of the accident, these forces would not produce a shift from neutral to forward rather than forward to neutral.
The second major defect that Trosclair is alleged to have failed to disclose is the absence of a safety guard over an opening on one side of the metal housing over the blade. The purpose of the guard was to protect the blade from foreign objects. Regardless of its potential for injury or Trosclair's failure to warn thereof, the evidence is uncontradicted that the absence of the safety guard was not a cause of Mrs. Mudd's injuries. Mrs. Mudd testified that, after shifting the mower into neutral, she had disengaged the blade, which is done by a separate lever, before she got off to move the obstructions lying in her path and that the blade was not turning when the mower struck her from behind. Thus, the existence of this alleged defect and Trosclair's failure to disclose it is immaterial in determining whether he breached the duty of care owed by a gratuitous lender to his borrower.
Moreover, we are unable to find a breach of the ordinary duty of care owed by every person to repair damage caused by his fault. La.Civil Code arts. 2315, 2316 (1870), as amended by Acts 1960, No. 30, § 1, as the evidence establishes no negligence by Trosclair. Thus, even under the general rules of delict, liability cannot be imposed.

CONCLUSION
In sum, Trosclair owed a special duty of care to disclose known defects in the thing lent to its borrowers. The evidence establishes that he did not, in fact, know of the defect in the mower that allegedly produced Mrs. Mudd's injuriesor, in fact, that he could be expected to know of it. Moreover, Trosclair's conduct satisfies that standard of care generally imposed upon all persons not to injure others by their negligent conduct. Finding no actionable breach of duty on the part of Trosclair, we need not consider the issue of the Mudds' alleged contributory negligence, raised by Travelers in defense.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in favor of the defendant, Travelers Indemnity Company, and against the plaintiffs, Ben and Olga Mudd, rejecting plaintiffs' demands at their cost. All costs of this proceeding are assessed against respondents.
NOTES
[1] See Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970).
[2] For a thorough discussion of both Louisiana and French constructions of the term see Comment, Article 2322 and the Liability of an Owner of an Immovable, 42 Tul.L.Rev. 178, 182-84 (1967).
[3] See Cothern v. LaRocca, 255 La. 673, 683-84, 232 So.2d 473, 477 (1970) and cases cited therein.
[4] The jurisprudence abounds with references to the common law transaction denominated as a bailment. See, e. g., Dore v. Hartford Accident & Indemnity Co., 180 So.2d 434 (La. App.3d Cir. 1965) and cases cited therein. For comparative law purposes, it is interesting to note that both the gratuitous bailment of common law (as distinguished from a bailment for hire) and the loan for use of civil law may be traced to the real contract of Roman law known as the commodatum. See R. Brown, The Law of Personal Property 312-19 (1955); F. H. Lawson, A Common Lawyer Looks at the Civil Law 135-37 (1953). Hence, the two concepts are similar. However, appropriate reference in Louisiana must be made to the statutory rules contained in the Civil Code governing the loan for use, La.Civil Code arts. 2893-2909 (1870), rather than common law concepts of bailment, which have no legislative basis in our law.