1 iCOOKS, Judge,
dissenting.
Sarah Winchell filed suit against Brown-Walker Partnership, Stirling Properties Partnership (the owner’s leasing agent and manager of the Sharlo Apartment Complex), as well as other defendants. The petition alleged Winchell sustained damages as a result of defendants’ negligence and lack of care. Winchell asserted she had a right to recover damage under two legal theories: (1) strict liability; and (2) negligence. The trial court granted summary judgment in favor of defendants, Brown-Walker Partnership and Stirling Properties Partnership, finding the absence of any genuine issue of material fact and these defendants’ were entitled to judgment as a matter of law. I disagree.
On or about June 12, 1990 Winchell leased an apartment situated at 130 Township Lane known as “Sharlo Apartments.” On September 7, 1990, she was advised by Acadiana Treatment Systems, Inc. that the apartment complex’s water supply was tested and found contaminated by high levels of coliform bacteria which exceeded the maximum contamination rate set forth in state and federal primary drinking water regulations. As a result of the contaminated water supplies, Winchell alleges she began suffering body lesions which resulted in permanent scarring. Her condition, as alleged, has been medically identified as cutaneous benign peri arthritis nedosa. In addition to the lesions which covered her entire lower extremities, Winchell alleges she also suffered from extreme fatigue, exhaustion, nausea and constant headaches directly attributable to the contaminated water supply. Specifically, _jjWinchell alleges Brown-Walker Partnership’s liability results from owning premises which were defective and unreasonably dangerous; owning property which had deteriorated to an unreasonably unsafe state; and allowing the water supply to become toxic, hazardous and unreasonably dangerous for every day use. In original and supplemental petitions, she alleges the owner and/or Stirling Properties Partnership, as managing agent, more particularly were liable under theories of strict liability and ordinary negligence for the acts and omissions listed below:
“A. In owning and/or controlling premises which are defective and unreasonably dangerous;
B. In owning and/or controlling property which has been allowed to deteriorate into a state of disrepair and unreasonableness;
C. In allowing the drinking water supply of plaintiff to become toxic; hazardous and/or unreasonably dangerous for consumption and everyday use;
D. In failing to take such measures so as to avoid contamination of the drinking water supply and to maintain a safe supply for plaintiff;
E. Failing to notify plaintiff of this hazardous condition and the dangers associated therewith in utilizing and consuming water from the contaminated supply.
F. Otherwise, failing to use due care and caution commensurate with the facts and circumstances then and there existing;
G. Violation of the statutes of the United States of America, State of Louisiana, as well as local ordinances, all of which are specifically pleaded herein as though recited hereto in extensio; and
H. Any and all acts of negligence, fault, carelessness and unskillfulness as may be established by a pre-trial discovery and/or shown during the trial of this matter.”
Later responding, defendants filed Motions for Summary Judgment seeking dismissal of the suit. By answer and supporting affidavits, they denied any legal responsibility for the contaminated water supply attesting that the “water system” was entirely under the exclusive control and ownership of Acadiana Treatment System. Granting summary judgment, the trial judge concluded, “The *403 affidavit submitted by Johnson Properties from Aeadiana Treatment Systems establishes that Aeadiana Treatment Systems is the owner of the water distribution lines and the sole owner and operator of the water supply and distribution system.... The affidavit submitted by mover established that the Brown Partnership was not involved in the ^manufacture or distribution of the water; and, therefore, it would not be liable for any defective condition of the water in the absence of knowledge.” Winchell urges summary dismissal of the suit against these defendants was legally incorrect. I agree.
Summary judgment is a drastic remedy and should be granted only if the pleadings, depositions, and answer to interrogatories and omissions, together with affidavits (if any) show there is no genuine issue as to material fact; and, the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980). The party moving for summary judgment must affirmatively and clearly prove the absence of a genuine issue material fact. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (La.1983); Durrosseau v. Century 21 Flavin Realty, 594 So.2d 1036 (La.App. 3d Cir.1992); Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4th Cir.1990).
It is well settled that an owner-lessor is held in strict liability for personal injuries sustained by his lessee as a result of defects in the lease premises. This liability attaches whether or not any specific fault on his part can be shown. Thus, neither his ignorance of the defect nor its latency will defeat an injured tenant’s recovery. La.C.C. arts. 2322, 2693, and 2695; Smith v. Hartford Acc. and Indem. Co., 399 So.2d 1193 (La.App. 3d Cir.1981), writ denied, 406 So.2d 604 (La.1981); Anslem v. Travelers Insurance Co., 192 So.2d 599 (La.App. 3d Cir.1966); Wexler v. Occhipinti. 378 So.2d 1073 (La.App. 4th Cir.1979), writ denied, 381 So.2d 1232 (La.1980). Only the fault of a third person, the fault of the victim, or an irresistible cause or force not usually foreseeable would absolve the owner from responsibility. The owner’s obligation to keep his property free of vices or defects which may pose unreasonable risks of injury to occupants or visitors is non-delegable. Hunt v. City Stores, 387 So.2d 585 (La.1980); Olson v. Shell Oil, 365 So.2d 1285 (La.1978); Gaspard v. Pargas of Eunice, Inc., 527 So.2d 28 (La.App. 3d Cir.1988); Brown v. Soupenne, 416 So.2d 170 (La.App. 4th Cir.1982); Smith v. Hartford Accid. and Indem. Co., 399 So.2d 1193 (La.App. 3d Cir.), writ denied, 406 So.2d 604 (La.1981). In order for the fault of a third person to exonerate the owner-lessor from his own' obligation under strict liability, the third person’s fault must be the sole cause of the damage. As expressed in Olson v. Shell Oil Co., 365 So.2d 1285 (La.1978), “[T]he owner cannot by [contracting with another] limit his law-imposed liability to third persons for injuries arising from premise defects.” See also Klein v. Young, 163 La. 59, 111 So. 495 (1927). The JjLouisiana Supreme Court clearly stated in Olson “[T]he fault of a third person, which exonerates a person from his own obligation importing strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence i.e., where the damage resulting has no causal relationship whatsoever to tte fault of the owner in failing to keep his building in repair, and where the ‘third person’is a stranger rather than a person acting with the consent of the owner in the performance of the owner’s non-delegable duty to keep his building in repair.” (Emphasis added). Both the owner and contractor may be liabb for their independent fault in causing a lessee’s injury. Though the fault of the owner nay be diminished by application of the principles of comparative negligence to the defases of victim fault or third party fault in a sfrict liability suit, such fault may not be entirely absolved. See Clement v. Armoniet, 527 So.2d 1004 (La.App. 5th Cir.1988); Womack v. Housing Aut. of New Orleans, 508 So.2d 936 (La.App. 4th Cir.1987); Gallagher v. Iavrot, 499 So.2d 1205 (La.App. 5th Cir.1981), writ denied, 503 So.2d 23 (La.1987).
Bown-Walker contends the pleadings and affilavits submitted undisputedly evidences tha Aeadiana Treatment System was the *404 owner and operator of the water lines and solely responsible for its distribution to the apartment complex. It denies any involvement in the manufacture or distribution of the water; and, further denies having any prior knowledge of the contaminated water supply prior to institution of the present suit. Further, it attempts to escape liability as owner of the premises arguing that the water was not a defect in the premises; and the lessee’s injury resulted from the fault of a third person. Stirling Properties, in memorandum, adopted the position of Brown-Walker Partnership and asserted it too was not liable for the contaminated condition of the water supply. Stirling Properties has not filed an answer or other response to appellant’s appeal.
In addition to arguing that Brown-Walker Partnership and Stirling Properties Partnership were responsible as landlord-lessors of the apartment complex, appellant contends they also are liable as sellers of the water. Appellant alleges as part of the rental agreement Brown-Walker and Stirling Properties Partnership contracted to provide water and sewer services to her unit. Appellant states she was not advised of any contractual arrangement existing between the owner, leasing agent, and Acadiana Treatment System; and she did not execute any separate contract with Acadiana Treatment System to provide water and sewer services to her unit. As lessee, she was not required to make payments directly to Acadiana | gTreatment System; and she did not receive any itemization or other notification indicating that her leased unit was individually assessed monthly for such services. The service charges for the entire complex were paid monthly by the owner through its managing agent to Acadia-na Treatment Systems. At the time the lease agreement was executed, appellant was not given any options to secure such services from an independent source.
Defendants contention that the eontimi-nated water supply did not constitute a vice or defect “in the premises as originally «instructed or which resulted from disrepdr.” La.C.C. art. 2822 reads:
“The owner of a building is answerablefor the damage occasioned by its ruin, wien this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
The word “ruin” as used in this provision generally has been defined as having reference to the actual collapse or deterioration of the building or one of its components. See Davis v. Royal Globe Insurance Co., 257 La. 528, 242 So.2d 839 (1970). As noted in Davis, favorably quoting from Guidry v. Hamlin, 188 So. 662, 664 (La.App.Orl.1939):
“The article was said to have ‘no reference to any situation except that in which some part of the budding collapses, or breaks, or gives way.’ See Montgomery v. Cantelli, 174 So.2d 238 (La.App.1965) ... the English text of the Louisiana Code of 1808 translates ruin as ‘falling down’. Comment 42 Tul.L.Rev. 178, 184 (1967). Article 2322 is considered a reiteration of the principle that the budding must ‘fall’ expressed in Article 670 of the civil code, except that it permits recovery by third persons lawfully owning the premises, whereas 670 limits the owner’s responsibdity to neighbors and passers-by.”
Although traditionady this article has been interpreted as holding the owner liable only for defects actually existing in the budding, jurisprudentiady it has been extended to “appurtenances” of the budding or premises, as well. See Cothern v. LaRocca, 255 La. 673, 232 So.2d 473; Dunn v. Tedesco, 235 La. 679, 105 So.2d 264 [ (1958) ]. As reflected in a subsequent lease agreement executed between the parties, the landlord agreed to “have ad heating, plumbing, electricity and air conditioning systems on the premises in good working order.” While La.C.C. art. 2322 specifically refers to damage occasioned by the ruin of a building, it does not prevent an owner from assuming liability for other objects or things which may not be affixed to the budding but which may enter it with the owner’s permission or authorization. If the owner undertakes, as in this case, responsibility for the plumbing system, uthen he cannot deny his obdgation to maintain such system in good working condition. Plumbing systems may include not only pipes but also the water, gas, or other substance which is designed to flow through it. We recognized *405 when municipalities or other governing bodies undertake to provide such services they may bear full responsibility for damages occasioned by their failure to properly manage and exercise proper care in the distribution, quality, and disposal of utility products. See Chandler v. City of Shreveport, 169 La. 52, 124 So. 143 (1929); Urban Land Company v. City of Shreveport, 182 La. 978, 162 So. 747 (1935). More recently, the jurisprudence has held that such public providers are strictly liable under LSA-C.C.P. art. 667 for the harm occasioned by improper installation or delivery of utility services. Hamilton v. City of Shreveport, 180 So.2d 30 (La.App. 2d Cir.1965), writ denied, 248 La. 700, 181 So.2d 399 (1966); Sharon v. Connecticut Fire Insurance Company, 270 So.2d 900 (La.App. 1st Cir.1972), writ denied, 275 So.2d 788 (La.1973); Lombard v. Sewer & Water Board of New Orleans, 284 So.2d 905 (La.1975); Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir.1975), writ denied, 318 So.2d 53, (La.1975); and LaCroix v. Travelers Indemnity Company, 333 So.2d 724 (La.App. 2d Cir.1976), writ denied, 338 So.2d 112 (La.1976). This is so because landowners are often compelled to accept such services and are prevented by law from securing these services from an independent source. For example, see LSA-R.S. 33:4004. However, an owner who contracts with a private business to provide such services may not be similarly exempted from liability. In the latter case, the owner may bind himself for vices or defects present in the “thing,” though supplied by an independent contractor, if he allows it to enter his premises; and, thereby allows it to become an integral part of the budding’s plumbing system. The owner may not escape total liability by placing blame entirely on the third party whom he contracted with to provide a necessary component of the plumbing system. Both the owner and the contractor may be judged responsible for the safe drinking condition of the building’s water supply.
Further, a lessor who undertakes in the lease agreement to provide water or otherwise to maintain the plumbing system in good working order may contractually assume liability for the damages caused by consumption of contaminated water even if supplied by a third party. La.C.C. art. 2695 provides:
“The lessor guarantees the lessee against all the vices and defects of the things, which may prevent its being used even in case it should appear he knew nothing of the existence of such vice and defects, at the time the lease was made, and even if they have arisen since, ^provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vice and defects, the lessor shall be bound to indemnify him for the same.”
The lessor is further bound as provided by La.C.C. art. 2693:
“To make, during the continuance of the lease, all repairs which may accidently become necessary except those in which a tenant is specifically legally bound to make or otherwise assumed by covenant.”
Appellee points out that this court would not find an owner-lessor liable for the damage occasioned by a power surge caused solely by the negligence of a company providing electrical services to the premises. Countering, appellant urges the water was an object of the lease; and, as such, the owner and leasing agent assumed responsibility for any vices or defect in the substance. She further argues to accept defendant’s position would exonerate owners of buildings from liability because “almost in every instance they would be able to point the finger at a builder, contractor or material supplier.” I find this argument persuasive. An owner-lessor who undertakes to provide water and sewer services in connection with a lease contract assumes legal responsibility for the thing allowed to enter the premises and intended for consumption by the lessee. Louisiana Civil Code Article 2718 places responsibility on the owner for the “cleaning of wells and necessaries” unless the contrary is stipulated in the lease contract. In this case, the lessee was powerless to seek water or sewer services from any other source than that selected by the landlord. Under the circumstances, I believe the trial court legally erred in granting summary judgment dismissing the suit against Brown-Walker Properties Partnership.
However, I am unable to determine (based on the record before us) whether the trial *406 court properly dismissed Stirling Properties Partnership as a party to the suit. Appellant recites in brief and in the pleadings, at all material times, she made rental payments directly to Stirling Properties Partnership. Stirling Properties Partnership admits it agreed to serve as the owner’s leasing agent and manager of the Sharlo Apartment complex. While Stirling Properties Partnership stated it was the successor to Management Plus, it denies managing the subject property at the time the lease was perfected by appellant. After examining the record, I am unable to determine whether Stirling Properties was the landlord’s agent at the time of appellant’s injury. There are two (2) leases in the record: one executed by appellant and Management Plus on June 8, 1990; and, the other executed by appellant and Stirling | ^Properties dated February 7, 1990 which recites in the body it was to commence on February 1, 1991 and end on July 31, 1991. Appellant received notification of the water contamination on September 7, 1990; and, thereafter filed the present suit. Thus, I would remand the pending suit against Stirling Properties to determine the date it undertook responsibility as the leasing and management agent of the apartment complex. If Stirling Properties assumed such responsibility prior to the consumption of the contaminated water, then it too may be held legally responsible as the landlord’s agent by contractually agreeing to act in its stead as owner and lessor of the premises.