Joe W. CHAPMAN et ux., Appellants,

v.

PARKING, INC., Appellee.

No. 13489.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 7, 1959.

Rehearing Denied Nov. 4, 1959.

**440**

Stahl & Sohn, San Antonio, for appellants.

Matthews, Nowlin, Macfarlane & Barrett, James D. Baskin, Jr., San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by appellants, Joe W. Chapman and wife, Jessie F. Chapman, against appellee, Parking, Inc., for damages for personal injuries to Jessie F. Chapman, resulting from a fall on premises not owned, maintained or controlled by appellee, but only a few feet from its premises. Parking, Inc., made a motion for a summary judgment, which was granted by the trial court and judgment entered that

Chapman and his wife take nothing. The Chapmans have presented this appeal.

Appellants present but one point, as follows:

"The trial court erred in sustaining defendant's motion for summary judgment and rendering judgment that plaintiffs take nothing, for the reason that there were genuine issues as to material facts which should have been determined by a jury."

The motion for a summary judgment was submitted upon the pleadings, exhibits, pictures, affidavits, diagrams, and a statement of facts containing some 54 pages of testimony given by deposition. Insofar as this motion for summary judgment is concerned, the record shows that Mrs. Chapman was a guest in the automobile of Mrs. O. B. Manes on the morning of January 16, 1958. The two ladies drove to the business part of San Antonio, and Mrs. Manes parked her automobile in a parking lot known as "Y" Parking Lot, operated by appellee. Mrs. Chapman and Mrs. Manes left the parking lot and went to the Gunter Hotel to attend some kind of gathering. There is another parking lot adjoining the "Y" Lot, known as Auditorium Lot. These two lots have the general appearance of constituting but one large parking lot, and at one time they were operated as such, but now constitute two separate parking lots operated under different managements. The two parking lots comprise an area bounded on the north by Convent Street, on the east by Navarro Street, on the south by Martin Street, and on the west by N. St. Mary's Street. The two lots are fenced together with a 6½ foot cyclone fence, which adds to their appearance as being but one large parking lot. They have a common asphalt pavement, and there is nothing to indicate where one lot ends and the other begins, except a painted line upon the pavement. "Y" Lot is operated by Parking, Inc., and Auditorium Lot is operated by one Raymond O. Gomez. There are two entrances to Auditorium Lot, and three entrances to "Y" Lot. From all

the facts and circumstances it was reasonable for the public to believe that the two parking lots were being operated as one.

The manager of Auditorium Lot had taken old railroad ties, either 4 x 4, or 4 x 6, and bolted them to the pavement, entirely across the east end of the lot, 3½ feet from the boundary line of the two lots. These railroad ties served as a back stop or a bumper block. He would park cars with the rear wheels against this bumper block so that the rear end of the cars would extend over the block, but not so far as to reach over the boundary of the "Y" Lot. The cars were generally parked from 12 to 15 inches apart, so as to have a passageway between them. When the cars were thus parked the bumper block was difficult to see, as it had been there for some time and its color was similar to that of the pavement, and it was shadowed by the overhang of the cars.

When Mrs. Manes and Mrs. Chapman returned to the parking lot, the first entrance they came to was the entrance near the southwest end of Auditorium Lot, and thinking this was an entrance to "Y" Lot they entered, a mistake that was often made by patrons of these two lots. Realizing that Mrs. Manes' car was at the other end of the lot, they attempted to go through the line of cars parked against the bumper block. While Mrs. Chapman was attempting to cross through this line of cars, and not seeing or knowing that the bumper block was there, she struck her foot against it, causing her to fall and injure herself. No one warned Mrs. Chapman of the presence of the bumper block and there were no signs or anything else to warn of its presence.

The trial court apparently granted the motion upon the theory that the bumper block was not on the premises occupied and controlled by appellee, and that there could be no liability caused by a hazard which was not on premises owned, maintained or controlled by appellee. The record shows that Ernest McAsham, the president of appellee corporation, knew that "Y" Lot customers who mistakenly returned through the Auditorium Lot entrance would have to walk between the cars and could fall over the bumper block if they did not see it or know it was there. McAsham further knew that if the bumper block was painted some light color it would be more easily observed, but never asked Raymond O. Gomez, the operator of Auditorium Lot, to so paint it. McAsham admitted that he could have built a fence along the dividing line between the two parking lots, or placed some other barrier there without interfering with business, but this he did not do.

Antonio Gomez (not to be confused with Raymond O. Gomez, the operator of the Auditorium Lot), the attendant in charge of "Y" Lot, stated that "a lot of people" who parked their cars in Auditorium Lot crossed to the "Y" Lot looking for their cars and vice versa.

This was the first visit of Mrs. Chapman and Mrs. Manes to "Y" Lot, and they did not know that the two lots were under separate management. They thought that they were entering the same parking lot where their car was parked, when they entered Auditorium Lot, a mistake they were justified in making, under all the facts and circumstances.

We are not cited to any Texas case where the facts were similar to those in this case. Appellee contends that it owed Mrs. Chapman no duty to warn her of the existence of the bumper block, because it was not on property owned, leased, or controlled by it, but was upon property leased and controlled by Raymond O. Gomez, the proprietor of Auditorium Lot, and owing Mrs. Chapman no duty, it could not be held liable for her injury.

There are cases from other jurisdictions having very similar facts and shedding much light upon the questions here presented. Gladwin v. Hotel Bond Co., 19 Conn. Sup. 106, 110 A.2d 481, by the Superior Court of Connecticut, involved facts strik-

ingly similar to those in this case. The injury occurred as the customers were leaving the parking lot, rather than returning to it, and the bumper block was upon the dividing line of the two parking lots instead of 3½ feet from it. The two parking lots had been operated as one, but at the time of the injury were under separate management. Customers crossed from one lot to the other looking for their cars. This fact was known to the proprietors of both lots, and the court held that both operators of the lots were liable when a customer was injured by falling over the bumper block.

Another case somewhat similar to the case at bar is Great Atlantic & Pacific Tea Co. v. Pedersen, 1 Cir., 247 F.2d 4, in which a lady injured herself on property beyond the parking lot, and the operator of the lot was held liable for failure to warn its customer of the danger. Another case in point is Carleton v. Franconia Iron & Steel Co., 99 Mass. 216. See, also, Shields v. Food Fair Stores of Florida, Fla.App., 106 So.2d 90; Viands v. Safeway Stores, D.C.Mun. App., 107 A.2d 118; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; Hendrix v. Eleventh Street Realty Co., Inc., Tenn., (not designated for publication, decided Jan. 8, 1959).

A jury might very properly have found that the proprietors of Lots "Y" and Auditorium knew that the public was confused and believed that the two lots were being operated as one, and that they used the entrances into "Y" Lot as entrances to Auditorium Lot and vice versa. That they crossed back and forth from one lot to the other in looking for and going to their cars, and were thus forced to cross the bumper block. That the bumper block was a hazard because it was difficult to see on account of its color, and extremely difficult to see when cars were parked against it with their over-hang covering it almost entirely. That in effect their customers were using the passageway between cars parked against the bumper block as an entrance into their respective lots, and that under the

circumstances the proprietor of "Y" Lot was guilty of negligence in not in some way warning its customers of this hidden hazard.

Appellee failed to show that there were no genuine issues as to a material fact to be decided by the trier of facts and therefore was not entitled to a summary judgment. The trial court erred in granting appellee's motion for summary judgment and in rendering judgment that appellant take nothing.

The judgment is reversed and the cause remanded.