BETTY JO WALLER ROACH, *now* BETTY JO WALLER

*v.*

McCRORY CORPORATION, *a corporation*

(No. 13443)

Decided December 20, 1974.

*Jones, Williams, West & Jones, James C. West, Jr.*, for appellant.

*Johnson & Johnson, Charles G. Johnson* for appellee.

SPROUSE, JUSTICE:

This is an appeal by the plaintiff, Betty Jo Waller, from a judgment of the Circuit Court of Harrison County. By its final judgment order, the circuit court set aside a verdict in the amount of $40,000 in favor of the plaintiff and entered judgment for the defendant, McCrory Corporation.

The issues are whether there was sufficient evidence of negligence to warrant jury consideration and, by cross-assignment of error, whether the inadvertent mention of insurance by one of the plaintiff's witnesses requires a new trial.

On Saturday, April 12, 1969, after the store's closing, a stock boy, the defendant's employee, applied a substance, "mycrobrite", to the entire main floor. The store was closed Sunday. On Monday evening, April 14, 1969, the stock boy swept the floor with a dry yarn mop, covering the entire floor. He noticed no excess "mycro-

brite". On Tuesday, April 15, 1969, shortly after noon, the plaintiff slipped and fell while shopping. The plaintiff was accompanied by a friend. The plaintiff, her friend, and an employee of another store presented the testimony for the plaintiff. The defendant introduced countering evidence, consisting of the testimony of several employees and a representative of the company who manufactured mycrobrite.

According to the plaintiff's evidence, she was helped to her feet after the fall by her friend and an employee of the store. She then complained of feeling sick, and the store employee brought her a chair. While sitting on the chair, she observed more closely the point where she fell. She described a curving heel mark about a foot and one-half long and remarked that the floor was shiny. She testified that before leaving the store, she had inspected the spot more closely and that "it was oily; it was, as I say, a clear shiny substance * * *." She testified she tested the substance by feeling it with her hands. According to the plaintiff's description, the oily spot on the floor was circular and approximately a foot and one-half in diameter. She testified that the spot was different in color from the rest of the aisle. It resembled the darker color of the floor under the edge of the counters. The store manager later indicated that the space under the counters was dark due to a "build-up" of mycrobrite by numerous applications. The plaintiff testified that after her fall, the oily-like substance was on her skirt and shoe. The friend who saw her fall also described the heel mark on the floor at the point of the fall. The plaintiff's witnesses corroborated her evidence as to her physical appearance.

The sales manager of the manufacturer of mycrobrite testified concerning the safe characteristics of the product, indicating the proper way it should be applied. According to his testimony, the entire floor should be swept thoroughly and the product applied to an area of 50 to 100 feet. The excess material should then be absorbed by a clean, dry cotton mop before proceeding to another area. The stock boy indicated that he had not

followed this method, but had applied the mycrobrite to the store in one continuous operation, and had not immediately thereafter absorbed the excess with a mop. He testified, however, that he had "dry mopped" the entire floor on Monday evening preceding the day of the fall, some 48 hours after the application.

The duty owed to the invitee is one of ordinary care to keep the premises in a reasonably safe condition. 62 Am. Jur. 2d *Premises Liability*, Section 62, pages 308-09; Annot., 62 A.L.R. 2d 6, 13, 15.

A proprietor or owner of commercial premises has the right to apply wax, oil or similar substances to his floors, but he may be liable for injuries resulting from the negligent use or application of such substances. "The standard of care required of a storekeeper in oiling floors is that degree of care which persons of ordinary care and prudence are accustomed to use in oiling floors, having due regard for the object to be accomplished and the rights of those who are expected to frequent the store." 62 Am. Jur. 2d *Premises Liability*, Section 222, page 507.

One who sustains an injury in a fall on an allegedly slippery floor must show as a basis of the action that the floor on which the fall occurred was, in fact, dangerously slippery. When the slippery condition of the floor is attributable to oil, wax or a similar substance, the proprietor may be liable if he was negligent in the treatment of the floor. The plaintiff, therefore, must prove that the substance was negligently used or applied. In these circumstances, some courts have held that proof of negligence requires proof of prior knowledge by the proprietor of this dangerous condition. The majority and better view, however, is that proof of prior knowledge is only necessary where an agency other than the owner or storekeeper created the condition. The application of a wax, oil or other floor treatment by a proprietor which creates a dangerous condition is sufficient of itself to create notice to him that the condition exists. 62 Am Jur. 2d *Premises Liability*, Section 223, pages 509:10; 62

Am. Jur. 2d *Premises Liability,* Section 68, pages 316-17; 62 Am. Jur. 2d *Premises Liability,* Section 224, page 510; Annot., 62 A.L.R.2d 6, 31-34; and Annot., 63 A.L.R.2d 591, page 620.

There are four principal West Virginia cases involving injuries from falls caused by slippery substances. *Wendell v. C. C. Murphy Company,* 137 W. Va. 135, 70 S.E.2d 252; *Coates v. Montgomery Ward & Company,* 133 W. Va. 455, 57 S.E.2d 265; *Gilmore v. Montgomery Ward,* 133 W. Va. 342, 56 S.E.2d 105; *Reynolds v. Grant Company,* 117 W. Va. 615, 186 S.E. 603.

While there may be some confusion in comparing the language used in these opinions, we believe they stand for the proposition that a defendant is liable for a condition which he causes by negligently applying an offending substance to a floor regardless of whether it is later proven that he had prior knowledge of its presence. The act of applying the substance in itself creates such knowledge. While this is not explicit in these opinions, this statement of the law is consistent with the opinions viewed together. It certainly is the majority and better rule in this Country, and in any event, we hold it now to be the rule in West Virginia.

The plaintiff clearly established that the floor was slippery, and that her fall was caused by this condition. It is undisputed that the plaintiff fell; that there was a heel mark on the floor after the fall; that there was an oily substance on the clothing after the fall; that she felt an oily substance and that she noticed an oily spot on the floor; that this spot was different in color from other parts of the aisle, but was the same color as the areas of the floor under the edge of the counter which had excessive applications of mycrobrite.

Since the defendant admits treating the floor with the substance mycrobrite, it is not necessary to establish that it had prior knowledge or notice of the condition of the floor. The principal question, then, becomes whether there was sufficient evidence of negligence in the appli-

cation of the substance for a jury to consider. We think there was.

The stock boy testified that he applied the material in a fashion substantially different from that recommended by the manufacturer, and that it was 48 hours after the application when he used a "dry mop" to absorb excess material. The defendant introduced evidence showing that the material was safe and that even as applied, the mycrobrite should not create a dangerous condition. We are not, as a reviewing court, in a position to say that this conduct was negligent. All of the testimony taken together, however, presents conflicting evidence on the question of negligence which should be resolved by a jury. We hold, therefore, that the trial court was in error in determining there was not sufficient evidence on this issue for jury determination.

One of the witnesses for the plaintiff who was testifying as to her physical appearance was asked:

"Q. Let me ask you a couple other questions here, Mr. Ovies. Did you pay any attention to any other portion of her person that day? Did you notice her hands or her arms or her clothing or any thing of that nature?"

He replied:

"A. The clothing was in good shape, I would say. She had some blue marks or something here (indicating). That's when I said, 'Hell, there is no use fooling around, call the emergency car. Go to the hospital. *Those people have got insurance.*' " (Emphasis supplied.)

After overruling the defendant's motion for a mistrial, the court instructed the jury:

"The jury is instructed the conversation between Mr. Ovies and the plaintiff will be stricken and the jury will disregard it entirely with no inferences whatever to the statement made by this witness."

It is still recognized in this jurisdiction that testimony concerning the defendant's liability insurance can fatally prejudice a defendant. *Leftwich v. Wesco Corporation*, 146 W. Va. 196, 119 S.E.2d 401. When, as here, however, testimony concerning the defendant's insurance consisted of one isolated reference produced inadvertently by a witness, it will not be deemed sufficiently prejudical to cause a retrial of the action. This is particularly true where it clearly appears that counsel for the plaintiff did not solicit such testimony and could not have anticipated the objectionable answer of the witness, and where the court instructed the jury to disregard it. *Smith v. Gould*, 110 W. Va. 579, 159 S.E. 53; *Ambrose v. Young*, 100 W. Va. 452, 130 S.E. 810.

When a verdict of a jury has been improperly set aside by the trial court, this Court will reinstate the verdict and render judgment upon such verdict. *Western Auto Supply Company v. Dillard*, 153 W. Va. 678, 172 S.E.2d 388 (1970).

For reasons stated in this opinion, the order of the Circuit Court of Harrison County setting aside the verdict and entering judgment for the defendant is reversed and set aside, the verdict of the jury is reinstated, and judgment for the plaintiff on such verdict is rendered by this Court.

> *Judgment reversed;*
> *verdict for plaintiff*
> *reinstated;*
> *judgment entered by this*
> *Court.*