421 S.E.2d 247

Marthella **ANDRICK** and Joseph R. Andrick, Plaintiffs Below, Appellants,

v.

The **TOWN OF BUCKHANNON,** a West Virginia Statutory Municipal Corporation; Sam Baxa, dba Baxa Motel, Betty Phillips, dba the Cornerstone Restaurant; and Linda Lemasters, dba the Cornerstone Restaurant, Defendants Below,

Betty Phillips, dba the Cornerstone Restaurant; and Linda Lemasters, dba the Cornerstone Restaurant, Appellees.

No. 20450.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided July 20, 1992.

James T. Kratovil, Kratovil & Kratovil, Weston, for appellants.

Boyd L. Warner, Waters, Warner & Harris, Clarksburg, for appellees.

MILLER, Justice:

This is an appeal by the plaintiffs below, Marthella Andrick and Joseph R. Andrick, from an order of the Circuit Court of Upshur County dated February 21, 1991, which granted summary judgment in favor of two of the defendants below, Betty Phillips and Linda Lemasters, in a civil action for personal injury and loss of services. The circuit court ruled that the appellees owed the plaintiffs no duty of care as a matter of law. We disagree, and we reverse the judgment of the circuit court.

The facts appearing from the depositions and the affidavits of the parties are essentially undisputed. The appellees were the owners and operators of a restaurant business located on the west side of North Kanawha Street in the City of Buckhannon. The appellees leased the premises from Sam Baxa, who also owned a motel located across North Kanawha Street. The appellees' lease expressly provided that restaurant customers would be allowed to park in the motel parking lot free of charge.[1] A

1. Paragraph 17 of the lease stated, in pertinent part:

"Lessees shall further have the right for their restaurant customers to use the Baxa Motel

sign on the door of the restaurant advised customers that parking was available across the street at the motel. A similar sign was posted at the motel. Mr. Baxa acknowledges that he had the responsibility of maintaining and repairing the parking lot.

On March 11, 1988, the plaintiffs and their daughter decided to dine at the appellees' restaurant. The plaintiffs parked their vehicle on the motel parking lot and were walking towards the restaurant. At the point where the parking lot meets the sidewalk, Mrs. Andrick fell and was injured, allegedly because the pavement was uneven.

The plaintiffs subsequently brought suit in the Circuit Court of Upshur County against the appellees, the City, and Mr. Baxa. The complaint alleged that each of the defendants negligently failed to repair and/or maintain the sidewalk, thus, proximately causing Mrs. Andrick's injury and Mr. Andrick's loss of his wife's services.

Prior to trial, the appellees filed a motion for summary judgment, alleging that they had no duty to maintain the sidewalk and/or the motel parking lot. The circuit court concluded that because the appellees exercised no control over and had no responsibility to maintain the parking lot, they could not, as a matter of law, be held liable for the plaintiffs' injuries. By order dated February 21, 1991, the court granted the appellees' motion for summary judgment.[2]

The only issue in this appeal is whether summary judgment was appropriate because the appellees owed the plaintiffs no duty of care with regard to the condition of the motel parking lot.

■ The standard by which we judge the propriety of summary judgment was stated in Syllabus Point 3 of *Aetna Casualty &*

*Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

In the text of the opinion, we expounded upon the rule as follows: "A party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party can not prevail under any circumstances." 148 W.Va. at 171, 133 S.E.2d at 777. The burden is on the moving party, as we stated in Syllabus Point 6 of *Aetna:*

"A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment."

Summary judgment is not favored, and on appeal from an order granting summary judgment, the facts will be viewed in the light most favorable to the losing party. *Masinter v. WEBCO Co.,* 164 W.Va. 241, 262 S.E.2d 433 (1980).

■ The plaintiffs rely on the general principle that once a property is leased, the tenant is liable for injuries to third persons which are caused by the condition of the demised premises. *See Cowan v. One Hour Valet, Inc.,* 151 W.Va. 941, 157 S.E.2d 843 (1967). *See generally* 49 Am. Jur.2d *Landlord and Tenant* § 981 (1970 & Supp.1992). The plaintiffs assert that their relationship to the appellees was that of business invitees and that the appellees' obligation was that set out in Syllabus

---

parking area across the street from the leased Premises, free of charge, providing such use is reasonable, and does not unduly interfere or unreasonably obstruct the use of said parking lot by the Baxa Motel–Hotel owners and guests or customers."

**2.** The circuit court subsequently entered summary judgment in favor of the appellees on

cross-claims filed by Mr. Baxa and the City and dismissed the appellees from the litigation. Mr. Baxa appealed the summary judgment order to this Court, but the appeal was subsequently dismissed by agreement of the parties. There is no indication that the City appealed the summary judgment entered against it.

Point 2 of *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966):

> " 'The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition.' Point 2 Syllabus, *Burdette v. Burdette,* 147 W.Va. 313 [127 S.E.2d 249 (1962)]."

*Accord Haddox v. Suburban Lanes, Inc.,* 176 W.Va. 744, 349 S.E.2d 910 (1986); *Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335 (1980); *Roach v. McCrory Corp.,* 158 W.Va. 282, 210 S.E.2d 312 (1974); *Puffer v. Hub Cigar Store, Inc.,* 140 W.Va. 327, 84 S.E.2d 145 (1954).

The circuit court, on the other hand, apparently relied on the "common use" doctrine, which we stated in Syllabus Point 6 of *Cowan v. One Hour Valet, Inc., supra:*

> "There are exceptions to the general rule that a landlord or lessor is not liable to the lessee or his invitees for injuries received on leased premises, one of which is the 'common use' situation where the tenants or invitees of tenants are injured on part of the premises which can be used in common by tenants or by the public, and where the landlord retains control of certain places or things in connection with the leased premises."

*See Lowe v. Community Inv. Co.,* 119 W.Va. 663, 196 S.E. 490 (1938); *Marsh v. Riley,* 118 W.Va. 52, 188 S.E. 748 (1936).

We applied this principle in *Durm v. Heck's, Inc.,* 184 W.Va. 562, 401 S.E.2d 908 (1991), to a case in which the plaintiff was injured when she fell on an uneven sidewalk adjacent to a supermarket located in a multi-store shopping center. The terms of the supermarket's lease of the premises designated the sidewalk as a "common area" which the shopping center owner was required to maintain. We adopted the majority rule that the supermarket could not be held liable, stating in Syllabus Point 1:

> "Where a lease agreement clearly sets forth that the lessor has the duty to maintain the non-leased common areas, thereby retaining the lessor's control

over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains injuries as a result of an accident which occurs on the non-leased common area."

The appellees argue that these principles are applicable in this case, principally because Mr. Baxa acknowledged that he retained the responsibility to repair and maintain the motel parking lot. The appellees assert that as a result, they had no control over the parking lot and could not, under any circumstances, be held liable for injuries occasioned by a defect therein or on the sidewalk. We disagree.

First of all, we note that the lease between the appellees and Mr. Baxa did not expressly designate the motel parking lot as a "common area" or clearly establish that Mr. Baxa had the duty to maintain it, as did the lease in *Durm.* We further note that all of the common use cases cited above involved situations in which an area of the demised premises which was not included in the tenant's leasehold was used by multiple tenants and/or the public in general. The evidence presented to this Court shows that the customers of the appellees were permitted to use the motel parking lot pursuant to the express grant of such right in the lease and that the only other persons permitted to park there were Mr. Baxa's customers and employees.

More importantly, we believe a more flexible concept of "control" may be warranted in this case. In *Southland Corp. v. Superior Court,* 203 Cal.App.3d 656, 250 Cal.Rptr. 57 (1988), the lease of the premises on which the defendants' convenience store was located gave the defendants the right to use the adjacent vacant lot for the ingress and egress of their customers and employees and for additional customer parking. Because of limited parking on the store premises, customers frequently parked in the adjoining lot, and the defendants erected no barriers or signs to discourage the practice. The evidence also showed that local juveniles frequently congregated at the store and the adjacent lot, that fist fights had broken out from time to time, and that the store manager

had, on occasion, called the police to disperse loiterers from both the store premises and the vacant lot. The plaintiff was injured when he was attacked on the adjacent lot after returning from the store to his parked car.

In deciding whether the defendants owed a duty to the plaintiff, the California Court of Appeals started with the proposition that " '[a] defendant [generally] cannot be held liable for a defective or dangerous condition of property which it does not own, possess or control....' " 203 Cal. App.3d at 664, 250 Cal.Rptr. at 61, *quoting Isaacs v. Huntington Memorial Hosp.*, 38 Cal.3d 112, 134, 211 Cal.Rptr. 356, 367, 695 P.2d 653, 664 (1985). The court recognized, however, that in certain circumstances it had been recognized that a defendant may owe a duty to customers injured off a defendant's business premises when the circumstances causing the injury are within the defendant's reasonable supervision and control.[3] With regard to the concept of control, the court quoted from *Nevarez v. Thriftimart, Inc.*, 7 Cal.App.3d 799, 804, 87 Cal.Rptr. 50, 53 (1970):

"While it is true that 'the duty of care of the occupier of property arises from his right to control his own premises, such duty may be imposed when he invites intended customers to use, in conjunction therewith, *another's property over which his right of control is, perhaps, more apparent than actual.* [Citations.]' ... (Emphasis supplied.)" 203 Cal.App.3d at 667, 250 Cal.Rptr. at 63.

In conclusion, the court in *Southland* stated:

"Where, as here, there is evidence that [the defendants] received a commercial advantage from property they apparently had a leasehold right to use (which use by their customers they at least passively encouraged) and where their business was itself the attraction for both customers and loiterers, it is overly simplistic for the issue of control to be resolved solely by reference to a property boundary line and the fortuitous circumstance that the attack on [the plaintiff] took place just ten feet beyond it. While we can not conclude that these circumstances established that [the defendants] did exercise control over the adjacent lot, we do find that they are sufficient to raise an issue of fact that must be resolved by a jury." 203 Cal.App.3d at 667, 250 Cal.Rptr. at 63.

Even in the absence of a leasehold right such as the one involved here, courts in other jurisdictions have recognized that the duty of care to business invitees may extend beyond the premises of the owner or occupant where he knows that his invitees customarily use adjacent property in connection with his business. In *Chapman v. Parking, Inc.*, 329 S.W.2d 439 (Tex.Civ. App.1959), for example, a parking lot customer tripped over a cross-tie located on an adjacent parking lot. The two lots shared a common pavement, and the boundary between them was marked only by a painted line. The evidence showed that patrons of each lot could reasonably believe that there was, in fact, only one parking lot and customarily crossed the other to reach their destinations. The court concluded that there was sufficient evidence from which a jury could conclude that the defendant was guilty of negligence in not warning its customers of the hidden danger on the adjacent parking lot. *See also Ollar v. Spakes*, 269 Ark. 488, 601 S.W.2d 868 (1980); *Gladwin v. Hotel Bond Co.*, 19 Conn.Supp. 105, 110 A.2d 481 (1954). *See generally* 62 Am. Jur.2d *Premises Liability* § 12 (1990); 62A Am.Jur.2d *Premises Liability* §§ 660, 742 (1990); Annot., *Liability of Operator of Business Premises to Patron Injured by*

---

**3.** In particular, the court referred to *Schwartz v. Helms Bakery, Ltd.*, 67 Cal.2d 232, 60 Cal.Rptr. 510, 430 P.2d 68 (1967), in which a small child had been injured while crossing the street to purchase a doughnut from a mobile street vendor. In *Schwartz*, the California Supreme Court had held that "by undertaking to direct the child to an assigned rendezvous with the truck," the vendor had assumed a duty of care for the child's safety. 67 Cal.2d at 235, 60 Cal.Rptr. at 512, 430 P.2d at 70. In *Southland*, the Court of Appeals noted that other intermediate appellate courts had restricted the holding in *Schwartz* to cases involving mobile vendors, but concluded that the "elastic concept of control" enunciated in *Schwartz* had application in other cases. 203 Cal.App.3d at 665 n. 6, 250 Cal.Rptr. at 61 n. 6.

*Condition of Adjacent Property,* 39 A.L.R.3d 579 (1971 & Supp.1991).

Also of interest is *Warrington v. Bird,* 204 N.J.Super. 611, 499 A.2d 1026 (App. Div.1985), *certif. denied,* 103 N.J. 473, 511 A.2d 653 (1986), in which the defendant restaurant owner provided parking for its customers in a parking lot located across the road from the restaurant. The plaintiffs were struck by a car as they crossed the road late at night to return to their cars. In determining whether the defendant had a duty to customers crossing the road, the court stated:

"[T]he critical element should not be the question of the proprietor's control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited. Commercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. The benefiting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway.

\*    \*    \*    \*    \*    \*

" ... [W]hen a business provides a parking lot across the roadway from its establishment, the duty of the proprietor to exercise reasonable care for the safety of its patrons extends to conditions obtaining at the parking lot and requires that the patrons not be subjected to an unreasonable risk of harm in traversing the expected route between the two locations." 204 N.J.Super. at 617, 499 A.2d at 1029–30.

*See also Piedalue v. Clinton Elem. Sch. Dist. No. 32,* 214 Mont. 99, 692 P.2d 20 (1984). *Cf. Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322 (Fla.App.), *appeal dism'd,* 589 So.2d 291 (Fla.1991), and *Ember v. B.F.D., Inc.,* 490 N.E.2d 764 (Ind. App.1986), *modified on other grounds,* 521 N.E.2d 981 (Ind.App.1988) (tavern owner liable for injuries from assault in adjacent parking areas). *See generally* Annot., *supra,* 39 A.L.R.3d 579.

We do not read these cases to mean that a duty of care arises merely by the fact that a hazard exists on adjacent property. As we have already indicated, the duty exists only when the business owner has actual or constructive knowledge that its invitees regularly use the adjacent property in connection with its business. *See* 62A Am.Jur.2d *Premises Liability* § 742. In addition, it must be shown that the business owner was aware of the hazard which caused the injury. As the court stated 'in *Ollar v. Spakes,* 269 Ark. at 493, 601 S.W.2d at 870–71:

"[B]efore extraterritorial liability attaches, it must be shown that the owner or operator had actual or constructive knowledge of the danger of injury to his invitees. When an owner or operator learns or should have learned of a dangerous condition existing adjacent to his property and fails to attempt to correct the condition or warn the invitees of such danger, he is guilty of negligence."

*See also Cothern v. LaRocca,* 255 La. 673, 232 So.2d 473 (1970). *See generally* 62 Am.Jur.2d *Premises Liability* § 12; 62A Am.Jur.2d *Premises Liability* §§ 650, 660.

After reviewing these authorities, we conclude that where the operator of a business obtains the right for its customers to park in an adjoining lot owned by another and invites them to do so, the operator has a duty of reasonable care to protect its invitees from defective or dangerous conditions existing in the parking area which the operator knows or reasonably should know exist.

Here, the appellees not only knew that their customers were parking on the motel lot; they expressly invited them to do so. That this arrangement was of commercial benefit to the appellees is evidenced by the fact that the right of restaurant patrons to park in the motel lot was expressly reserved under the terms of the lease. It can be assumed that patrons who accepted the invitation were required to cross some portion of the parking lot to get to the restaurant. There is no allegation that Mrs. An-

drick chose an unreasonable or obviously dangerous route through the parking lot.

■■■ Mr. Baxa's admission that he had full responsibility for the repair and maintenance of the motel parking lot might well relieve the appellees of the duty to correct any defective condition of the pavement. It would not, however, relieve the appellees of a duty to warn their patrons of any dangerous condition in the parking lot of which they had actual or constructive knowledge. Whether the appellees knew, or by the exercise of reasonable diligence should have known, of the existence of such a condition on the motel parking lot is a question of fact. The record before this Court reveals that little evidence was adduced in the proceedings below on this issue.

It is evident that the appellees here have not carried their burden of demonstrating that they owed no duty of care to the plaintiffs. The evidence before the circuit court clearly presented a genuine issue of material fact in that regard. Consequently, we conclude that the circuit court erred in entering summary judgment in favor of the appellees.

For the reasons stated above, the judgment of the Circuit Court of Upshur County is reversed, and this case is remanded to that court for further proceedings.

Reversed and remanded.

WORKMAN, Justice, dissenting:

The majority's opinion is troubling in that syllabus point 3 seems in rather direct conflict with syllabus point 1 in last year's case of *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991). The majority indicates that, at least absent an express lease provision, any business which invites customers to park on an off-premises parking lot is liable for injury occurring to invitees as a result of defect or dangerous conditions. This has rather broad liability implications for many small businesses, especially in a case like the instant one where the parking lot owner clearly acknowledged that he retained the responsibility to repair and maintain the lot. Furthermore, it is a sharp departure from a fairly long line of cases where we have taken a different view. As we pointed out in *Durm*, in cases dealing with premises liability we have generally adhered to the principle that liability results either from control of the subject area or from a specific wrongful act. One wonders if this result might have been dictated by the existence of insurance coverage, as opposed to a coherent step in the development of the law in this area.

The majority opinion now leaves the law in this arena somewhat murky.