# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2013 Term

_____

No. 12-0205

_____

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## THE CITY OF FAIRMONT and FAIRMONT CITY COUNCIL,

### Defendants Below, Petitioners

### v.

## FAIRMONT GENERAL HOSPITAL, INC.,

### Plaintiff Below. Respondent

_____

### Appeal from the Circuit Court of Marion County
### The Honorable David R. Janes, Judge
### Civil Action No. 11-P-13

### AFFIRMED

_____

### Submitted: May 14, 2013
### Filed:  June 5, 2013

**Kevin V. Sansalone, Esq.**
**Fairmont, West Virginia**
**Counsel for Petitioners**

**Michael S. Garrison, Esq.**
**Kelly J. Kimble, Esq.**
**Spilman Thomas & Battle, PLLC**
**Morgantown, West Virginia**
**Counsel for Respondent**

**The Opinion of the Court was delivered PER CURIAM.**

SYLLABUS BY THE COURT

1.    "'"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).'  Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)."  Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

2.    "A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Per Curiam:

In the proceedings below, respondent, Fairmont General Hospital (hereinafter "FGH" or "the hospital"), filed a declaratory judgment action in the Circuit Court of Marion County, West Virginia, against petitioners, City of Fairmont (hereinafter "the City") and Fairmont City Council (hereinafter "the Council"), seeking a declaration that section 4.06 of the Fairmont City Charter was no longer applicable to the hospital and an injunction prohibiting individuals purportedly appointed to FGH's board of directors by the City from attending hospital board meetings. The City and the Council counterclaimed, seeking a declaration that FGH's Amended Bylaws were in conflict with its Articles of Incorporation and therefore void; and that appointments made by FGH to its own board, pursuant to the authority of the Amended Bylaws, were unlawful, invalid, and of no force and effect.

The circuit court granted summary judgment for the hospital, concluding that because FGH is no longer a "municipal hospital," section 4.06 of Fairmont City Charter does not apply to its actions; that FGH had the legal authority to appoint its own board of directors pursuant to West Virginia law and the hospital's governing documents, the Articles of Incorporation having been amended while the lawsuit was pending; and that the City and the Council lacked standing to challenge FGH's actions in amending its Bylaws, appointing its directors, and amending its Articles of Incorporation.

Upon full consideration of the parties' briefs and arguments, the record appendix, and

the relevant law, we affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

The City is an incorporated municipal body politic located in Marion County, West Virginia, operating at all times pertinent hereto under the Fairmont City Charter.  The Council is the governing authority of the City and is composed of nine council members elected by the voters of the City at large.

From 1938 through 1985, the City owned and operated FGH,[1] and on several occasions during that period, the facility was upgraded through public funding.  On April 3, 1984, the Council adopted section 4.06 of the Fairmont City Charter, providing in relevant part as follows:

> (a)    Management. The management, maintenance, administration, operation, custody and control of the municipal hospital and all the appurtenances thereof and grounds and site thereof, is hereby committed by a board of directors to be known as the "Fairmont Hospital Board."
>
> (b)   The Board shall consist of eleven members to be nominated and appointed by the Council.  It shall be composed of two members of Council . . . .

There is no dispute that at the time section 4.06 was adopted, FGH was a "municipal hospital."  However, on September 17, 1985, FGH became a private, non-stock, not-for-

---

[1]Pursuant to West Virginia Code § 8-12-5(41) (2012), a municipality has the power "[t]o establish, construct, acquire, maintain and operate hospitals, sanitarians [sic] and dispensaries[.]"

profit corporation as defined in Section 501(c)(3) of the Internal Revenue Code.  In order to

effectuate the hospital's change of legal status, the City passed Ordinance Nos. 689[2] and

690,[3] the former creating the Fairmont Building Commission (hereinafter sometimes referred

to as the "Building Commission"), and the latter conferring authority upon the city manager

to execute such instruments of conveyance as needed to convey the real and personal

property of the City to the Building Commission.  Thereafter, the Building Commission

leased the real property to FGH for a nominal amount, $100.00 per year, and sold the

personal property to FGH, also for a nominal amount, $1.00.

---

[2]In relevant part, this ordinance created the Building Commission with "plenary power and authority to [sic] as provided in West Virginia Code § 8-33-1, et seq." Chapter 8, Article 3 of the Code, entitled "Intergovernmental Relations - Building Commissions," and specifically § 8-33-4, *Powers*, provides, in part, that a building commission may

> (f)(1)   Acquire, purchase, own and hold any property, real or personal, and (2) acquire, construct, equip, maintain and operate public buildings, structures, projects and appurtenant facilities, of any type or types for which the governmental body or bodies creating such commission are permitted by law to expend public funds[.]
>
>     . . . .
>
> (h)     Sell, encumber or dispose of any property, real or personal[.]

[3]In relevant part, this ordinance transferred to the Building Commission the real property on which the hospital was located, together with "the appurtenances thereto, the fixtures thereof, and all personal property, machinery, equipment, furniture, appliances, tools, implements, utensils, materials, supplies, and inventory located thereon, for a public purpose[.]"

On September 19, 1985, FGH filed its Articles of Incorporation, and the City divested itself of the daily operations of the hospital. Notwithstanding this latter fact, both the hospital's Articles of Incorporation and its Bylaws provided, inter alia, for members of the corporate board of directors to be appointed by the Council, consistent with former practice under section 4.06 of the City Charter. Thereafter, for the next twenty-five years, FGH board members were appointed by the Council, and at all times two of the directors were members of the Council.[4]

On August 23, 2010, following years of unsuccessful negotiations with the City in an attempt to resolve the appointment issue, FGH amended its Bylaws to provide for appointment of its board members by the board itself, rather than the Council. Of the two Council members sitting on the board at the time the Bylaws were amended, one, Dr. Robin Smith, voted for the amendment, and the other, Deborah Seifrit, did not vote.[5] From August 23, 2010 to October 25, 2011, the date on which the board filed Amended Articles of Incorporation with the West Virginia Secretary of State, the provisions of the board's

[4]The circuit court found that under the facts and circumstances of this case, FGH's maintenance of the status quo ante from 1985 through 2010 did not constitute a waiver of its right to amend its Bylaws to provide for appointment of board members by the board, and this finding is not directly challenged on appeal in an assignment of error.

[5]The circuit court's findings of fact recite that Ms. Seifrit "did not attend the August 23, 2010, meeting, could not be reached by telephone, and did not vote on said amendments to FGH's bylaws." This finding is consistent with the minutes of the board's August 23, 2010 meeting.

Amended Bylaws were inconsistent with the provisions of its Articles of Incorporation with respect to the appointment of board members.

On January 24, 2011, in accordance with its Amended Bylaws, although not with its then-existing Articles of Incorporation, FGH made two appointments to its board.[6] The following day, in response to receiving notification of these appointments, the Council appointed two individuals to sit on the board, acting under the purported auspices of section 4.06 of the City Charter. The hospital refused to seat the Council's appointees and thereafter, on February 28, 2011, sought a declaratory judgment and an injunction in order to avoid what it termed a "public spectacle."[7] The City and the Council counterclaimed, alleging that the hospital's actions in appointing new members and in refusing to seat Council's appointees were "inconsistent with, contrary to, and in violation of the provisions of plaintiff's Articles of Incorporation" and "inconsistent with, contrary to, and in violation of the laws of the State of West Virginia." While the lawsuit was pending, FGH amended its Articles of Incorporation to eliminate the inconsistency with the Amended Bylaws. Thereafter, the City and the Council filed a supplemental counterclaim seeking an additional declaration that the

---

[6]One of the appointments was the reappointment of Council member Dr. Robin Smith, whose term had expired. Deborah Seifrit, whose term had also expired, was not reappointed.

[7]The hospital claimed that local media were planning to attend the board's upcoming meeting in anticipation of a confrontation in the event the Council's appointees appeared and demanded to be seated as board members. Based on these representations, the circuit court granted a temporary injunction on February 28, 2011, and a preliminary injunction on May 31, 2011.

Amended Articles of Incorporation were null and void. The City and the Council also alleged that FGH's actions in amending the Articles of Incorporation violated the West Virginia Open Hospital Proceedings Act, West Virginia Code § 16-5G-1 to -7 (2011).

On cross-motions for summary judgment, the circuit court ruled that the City and the Council had no standing to challenge FGH's actions as ultra vires; that section 4.06 of the City's Charter is inapplicable to FGH, as it is no longer a "municipal hospital"; and that in any event, FGH's board had the right to amend its Bylaws, amend its Articles of Incorporation, and thereafter re-adopt the Amended Bylaws, because there was at all times a quorum of members voting for these actions whose right to be on the board has never been in question.[8] The circuit court therefore granted FGH's motion for summary judgment, denied the City's and Council's motion for summary judgment, and dismissed the City's and Council's motion to vacate the preliminary injunction as moot.

## II. STANDARD OF REVIEW

" ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal*

---

[8]The circuit court wrote that "those directors who voted on both the amended Articles and the amended Bylaws were sufficient in number to constitute a quorum and to vote to adopt the Amended Articles even if the new (contested) members' attendance and votes were to be disregarded."

*Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

With respect to this Court's standard of review, we have held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

## III.  DISCUSSION

As set forth herein, the circuit court held that neither the City nor the Council had standing to challenge, either as ultra vires or as a violation of the Fairmont City Charter, the actions of the hospital's board in amending the corporate Bylaws, appointing new members to the board, and thereafter amending the Articles of Incorporation.  The petitioners agree that this issue, if decided against them, is dispositive of the case.

This Court begins, as did the circuit court, with West Virginia Code § 31E-3-304(a) & (b) (2009), which provide that:

**Ultra Vires**.

(a)     Except as provided in subsection (b) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(b)     A corporation's power to act may be challenged:

(1)     In a proceeding by a member or director against the corporation to enjoin the act;

(2)      In a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee, or agent of the corporation; or

(3)     In a proceeding by the Attorney General to dissolve the corporation or to enjoin the corporation from the conduct of unauthorized affairs.

The City and the Council concede that, as entities, they do not have standing under the statute to challenge FGH's power to act. They contend, however, that because one member of the Council wears "two hats," i.e., as a member of the Council and as a current member of the hospital's board, that individual, Dr. Smith, has standing under subsection (b)(1) of the statute.[9]  See *id.*  We find this argument wholly unconvincing because it is totally divorced from the facts of this case.  Dr. Smith is not a party and has not, in his capacity as a member of the hospital's board or otherwise, challenged the board's actions.[10] Indeed, he could not, as he voted in favor of the very actions challenged.[11]

_____

[9]Although the City and Council make this argument as though it applies to both Dr. Smith and Deborah Seifert, it is clear from the appendix record that by February 28, 2011, the date on which FGH filed this lawsuit, Ms. Seifert had ceased to be a member of the hospital's board. See *supra* notes 5 & 6.

[10]The petitioners cite no authority for the proposition that Dr. Smith was somehow a defendant, or a counterclaim plaintiff, by implication.

[11]In this latter regard, the circuit court noted that the petitioners' argument, assuming,
(continued...)

Having determined that neither the City nor the Council had standing pursuant to the applicable statute, we must determine whether they may nonetheless challenge the actions of FGH's board on the separate ground that such actions violated section 4.06 of the City Charter. As set forth *supra*, section 4.06 provides, in relevant part, that the Council has the right to make all appointments to the board of the "municipal hospital" and that at least two of the board's members shall be members of the Council. The City and the Council claim that FGH, notwithstanding its change of status in 1985 to a private, not-for-profit corporation, remains a "municipal hospital."

First, the City and the Council contend that Council's right to appoint the FGH board members "was and continues to be a quid pro quo for nominal rent of one hundred dollars a year." This assertion is not supported by any evidence in the appendix record; the first mention of a so-called quid pro quo arrangement is contained in a letter dated November 19, 2010, twenty-five years after the fact. Further, in any event, petitioners' motivations are irrelevant to a determination of the definition of "municipal hospital"; that the City wished to retain power over the hospital does not constitute proof that it had the right to do so. We find this argument to be without merit.

---

[11](...continued)
arguendo, that it had any validity, would "cut both ways": if Dr. Smith's membership on the Council somehow gives rise to standing for the Council and the City, his affirmative votes to amend the Bylaws and Articles of Incorporation would also give rise to a finding of waiver on their part. We express no view on this point, as it is a side issue unnecessary to the resolution of the case.

Next, the City and the Council contend that the composition of the hospital's board, as prescribed by section 4.06 of the City Charter, "mirrors the requirements of" West Virginia Code § 16-5B-6a." That statute, entitled "Consumer majorities on hospital boards of directors," provides in relevant part in subsection (a) that

> [t]he legislature further declares that nonprofit hospitals receive such major revenue from public sources and are so crucial in health planning and development that it is necessary to require consumer representatives on their boards of directors. Therefore, the legislature determines that nonprofit hospitals and hospitals owned by local governments should have boards of directors representative of the communities they serve.

Putting aside the fact that FGH is not "owned by a local government," as everyone in this case concedes,[12] there is not one word in the statute mandating – or even suggesting – that municipal officials should sit on a nonprofit hospital's board of directors as "members of the community." We find the petitioners' argument to be without merit.

Next, the City and the Council contend that section 4.06 of the City Charter is supported by public policy considerations and that it should be held applicable to FGH for this reason. This argument misses the mark; the issue before this Court is not whether section 4.06 is a wise exercise of municipal power, but rather whether FGH is a "municipal hospital" as the term is used. In any event, the public policy considerations cited by the

---

[12]As noted *supra*, on June 1 & 5, 1985, respectively, the City conveyed the real and personal property to the Fairmont Building Commission, and thereafter the Commission leased the land and sold the personal property to FGH.

-10-

petitioners are wholly unpersuasive. For example, the City and the Council "parade the horribles" by suggesting that FGH, governed by a board of directors not appointed by Council, might cease to deliver medical services, thus leaving area residents "to look exclusively to regional hospitals for anything more than primary care"; and that because FGH's vendors, suppliers and providers are subject to business and occupation taxes, only the presence of Council-appointed board members will allow the City "to secure this aspect of its tax base." We reject the underlying assumption, which is not supported by any evidence in the record, that non-Council appointees to the hospital's board are likely to run amok and abandon an institution that has existed for seventy-five years. We find the petitioners' argument to be without merit.[13]

---

[13]This Court notes three additional issues raised by the City and the Council that we decline to address because they are inadequately briefed. W. Va. R. App. P. 10(c)(7). First, the City and the Council contend that because the term "municipal hospital" is not defined in the City Charter, consideration "must be given to such issues as public funding, historical perspective and past practices, community interest & support, municipal ownership of real estate and improvements, municipal statutory authority, principals [sic] of waiver & estoppel, and protection of valuable municipal property rights." This sweeping proposition is neither supported by the evidence of record nor adequately addressed in the petitioners' brief. Indeed, the only evidence to which the petitioners refer in their argument is evidence that there was periodic discussion from 1985 to 2010 about the possibility of amending the City Charter, and that during those twenty-five years the hospital "recognized the City's authority to appoint the board of directors and this was reflected in the corporation's bylaws." All of this is irrelevant to a determination of the definition of "municipal hospital." The evidence might be relevant to a waiver argument, but the circuit court specifically found that FGH had not waived its rights by virtue of its lengthy acquiescence in the status quo, and we see no basis on which to disturb the court's findings of fact and conclusions of law in this regard. Second, the City and the Council contend that "[t]he Charter of the City of Fairmont is entitled to a presumption of validity." The entirety of the argument on this issue consists of the preceding statement. Third, the City and the Council contend that the lease of the real

(continued...)

In summary, this Court finds that the petitioners, City of Fairmont and Fairmont City Council, have no standing under West Virginia Code § 31E-3-304(a) & (b) to challenge the actions of Fairmont General Hospital as ultra vires; and that the petitioners cannot base a challenge upon section 4.06 of the City Charter, because Fairmont General Hospital, Inc. is no longer a "municipal hospital" governed by section 4.06.[14]

## IV. CONCLUSION

The judgment of the Circuit Court of Marion County is affirmed.

---

[13](...continued)
property to FGH, the bill of sale for the personal property, the original (1985) Articles of Incorporation, and the original (1985) Bylaws, taken together, constitute a binding and enforceable contract. The entirety of the petitioners' argument on this issue consists of the assertion that "the relationship between the several documents clearly manifests the intent of the parties and clearly establishes the written agreement." Not only is this nineteen word "argument" insufficient to preserve the issue for appeal, but also it omits any mention of a key document evidencing the intent of FGH to be something other than just a "municipal hospital." The hospital's Mission Statement provides that "[t]he mission of Fairmont General Hospital, Inc., as a private, non-profit hospital is to provide the people of *Marion County and the surrounding areas, and others in need*, with modern, high-quality individualized patient care[.]" (Emphasis supplied.) At oral argument in this matter, counsel for the petitioners attempted to discount the evidentiary significance of this Mission Statement by implying that it had not been created until 2010 or later. Contrary to this assertion, the materials in the record appendix indicate that a copy of the Mission Statement was conveyed to the city manager by letter dated September 11, 1992.

[14]Inasmuch as we have affirmed the circuit court's ruling that the petitioners have no standing under the statute, and cannot rely upon section 4.06 of the City Charter as a basis for attacking the actions of the respondent's board, it is unnecessary for this Court to consider the remaining issues raised by the petitioners in this appeal.

Affirmed.